DUNHAM and DIMON *against* PETTEE and MANN.

In an executory contract for the sale of an article to be paid for upon delivery at any time within a certain period, the obligations of the one party to pay and the other to deliver are mutual and dependent; and in an action by the seller for the price, it is not enough simply to show the default of the purchaser, he must show that he was ready and offered to deliver the goods.

Whichever party seeks to enforce the contract against the other, must show performance or a tender of performance on his part.

Where the court in an action by the vendor upon such a contract, charged the jury that, if the purchaser during the time appointed in the contract, did not demand the delivery of the article purchased, and offer to pay for it on the delivery, the plaintiff might recover, the charge was erroneous: the jury should be instructed that in order to enable the plaintiff to recover, he must show an offer of performance on his part.

Where the article sold is a quantity of iron in a bonded warehouse, it is not necessary that it should be brought to the purchaser in order to tender a delivery: it is sufficient that a tender of the permit by which it might be obtained be made. *Semble.*

This was an action brought in the court of common pleas of the city of New York, upon a contract made between the plaintiffs and the defendants in the following form:

"Sold to Messrs. Pettee & Mann, for account of Messrs. Dunham & Dimon, 155 tons (or thereabout) of English bar iron, as per specification of the same, now in public store in this city, at fifty dollars per ton, as per custom-house weigher's return, equal to six months credit; but payment for said iron is to be made as follows, to wit: 750 dollars to be paid now, and the balance is to be paid within sixty days from this date, and discount is to be made on the bill at the rate of seven per cent. per annum, reckoning the time from the date of the average payment of the bill until the end of the six months above named. The sellers are to hold a policy of insurance on the iron until the whole amount is paid; and the buyers are to pay the insur-

Dunham *against* Mann.

ance and all storage expenses from and after this date. It is understood that the iron is to be paid for on delivery, (within the 60 days aforesaid,) and should the full amount not be paid within the 60 days aforesaid, Messrs. Dunham and Dimon will be at liberty to sell the iron to .other parties, for account of Messrs. Pettee & Mann.

New York, 12th March, 1849.

NATHAN CASWELL, Broker."

The contract was set out in the complaint, and it was alleged that the defendants paid the sum of $750 mentioned in it, and that the plaintiffs were ready and willing to deliver the iron to the defendants and receive the balance of the price therefor, and in all respects to comply with the terms of the contract on their part, and that they within the sixty days mentioned in the contract offered and tendered to the defendants the iron, but that the latter were not ready and willing to receive it and pay the balance of the price, and wholly refused so to do. The defendants answered admitting the contract, but denied that the plaintiffs were ready or willing to comply with its terms, or that they offered or. tendered the iron to the defendants, and alleged that the defendants were ready and willing to receive the iron and to pay for it on delivery, and that they demanded its delivery of the plaintiffs, but that they were not able to deliver it and refused to deliver it. The plaintiff replied denying the allegations in relation to their refusal to deliver the iron.

The cause was tried in March, 1850. It was proved by the plaintiff that at the time the contract was entered into, the iron was stored in the United States bonded warehouse, where it remained until it was delivered to D. M. Wilson & Co., in October or November, 1849: that after the 23d of May, 1849, the storage upon it up to that day was paid by the plaintiffs: that the storekeeper requires a permit from the custom house before he will deliver the iron: that he always delivered goods stored without requiring

payment of the storage where he knew and had confidence in the parties: that in this case he would have delivered the iron, and he ultimately did deliver it without payment of the storage. The plaintiffs also proved that on the 11th of May, 1849, their clerk went to the defendant's office and delivered to the defendant Pettee, a bill of the iron. Mr. Pettee told him they wanted the custom house permit so that they could get the iron; and that they had sold the iron to D. M. Wilson & Co., and wanted to deliver it and get their notes in order out of their proceeds to pay the plaintiffs. The clerk then went to the plaintiffs' office and obtained the custom house permit and returned with it to the defendant's office at 25 minutes before 3 o'clock, when he was informed that Mr. Pettee was not in and would not be until 6 o'clock, and that he had left no check to pay for the iron. The clerk handed the permit to the defendants' clerk, but did not leave it with him, he having been ordered to bring it back if he did not get a check for the amount of the bill. It was also shown that on the 15th of May, 1849, it was agreed between the plaintiffs and defendants that the plaintiffs might dispose of the iron to D. M. Wilson & Co., upon a sale which had been agreed upon between the latter house and :he defendants, at $41 per ton payable in six months, and without prejudice to the claim of plaintiffs for the difference in the price to be paid by D. M. Wilson & Co. and that contracted to be paid by the defendants, or to the defendants' claim for a restoration of the advance of $750 made by them. The plaintiffs then showed the weight of the iron and rested.

The defendants' counsel thereupon moved for a nonsuit upon the following grounds:

"1. That there must be an actual delivery or tender of the iron before the plaintiffs can recover. 2. That a symbolical delivery is only good where the vendee accepts. That the worst construction that can be put upon the contract between the parties is, that payment and delivery are

simultaneous acts. 3. That if a symbolical delivery is good, then the plaintiffs have not made such delivery or offer to deliver."

The motion for a nonsuit was overruled, and the defendants' counsel excepted.

The defendants' counsel then called Caswell the broker, who made the sale. He testified that on the 8th of May, at the request of the defendants, he made sale of the iron to D. M. Wilson & Co., at $41 per ton payable in six months: that at the defendants' request, on the 9th of May he told one of the plaintiffs that he was requested by Mr. Pettee to say that the defendants were ready to take the iron and wished it delivered, to which he replied, " Very well, he would attend to it." The defendants then proved that on the 11th of May, between 12 and 1 o'clock, they sent their clerk to the plaintiffs' office to get the permit so that they might obtain the iron, and that one of the plaintiffs told him that the defendant Dimon was gone to the custom house for it, but that they would not deliver it until the money was paid, but that the clerk had no money to offer or tender.

The testimony being closed, the defendants' counsel requested the court to charge the jury as follows:

1. The contract taken together, shows that the sixty days prescribed therein were given for the benefit of the buyers, and it can not be so construed as to make payment for the iron a condition precedent to delivery. It can not be construed more unfavorably for the buyers than to make the payment and delivery concurrent acts.

2. The defendants have all of the sixty days within which to take the iron, and the plaintiffs should be ready to deliver at all times within the sixty days.

3. There was a sufficient demand by the defendants within the sixty days to put the plaintiffs in default.

4. The rights of the parties were thereby determined,

and the acts on the part of the plaintiffs in presenting the bill were nugatory.

·5. The plaintiffs, by their acts of the 11th of May did not put the defendants in default. There was no tender or offer by the plaintiffs to invest the defendants with the possession of the iron, or the right to its immediate possession.

6. The plaintiffs were bound to show that they did offer and tender the iron within the time specified in the contract.

The court declined so to charge, and in charging the jury commented upon the various rules of law in relation to the performance of contracts of sale, and the rights of vendors and vendees and instructed them that the principal question for them to decide was, " Have the defendants on their part during the sixty days demanded the iron, and in readiness to pay on their part, demanded the delivery: that going through the form of a demand without the ability or intention to pay, could not put the plaintiffs in default: that if under such directions they should find for the plaintiffs, they would give them the difference between what they had received on the sale to D. M. Wilson & Co. and the contract price, with the expenses." The defendants seasonably excepted to the charge and the omission to charge as requested. The jury found a verdict for the plaintiff for $753·38, and judgment was entered thereon.

The defendants appealed to this court.

*N. Hill, Jr.*, for appellants.

*A. Taber*, for respondents.

Ruggles, Ch. J. Under the contract of sale, the delivery of the iron and the payment of the money, were things to be done at one and the same time. The plaintiffs were not bound to deliver the iron, unless the defendants at the same time paid the money; and the defendants were not

Dunham *against* Mann.

bound to pay the price unless the plaintiffs at the same time delivered the thing sold, or was ready to deliver it. .The obligations to deliver on the one part and to pay on the other, were mutual and dependant. If the buyer in a case of this sort fails to pay or offer to pay within the time specified for mutual performance, the seller is discharged from liability to answer in damages for not delivering the thing sold. But it does not follow that the seller, in such case, is entitled from the mere default of the buyer, to recover the purchase money. To entitle the seller to recover the price, he must show not only that the purchaser failed to pay, but that he himself was ready and offered to deliver the goods. ( 12 *Johns.* 209, *Porter* v. *Rose*; 20 *id.* 130.)

The issue between the parties was framed upon a correct view of the legal question. between them. The plaintiffs averred that they were ready and willing, and offered to deliver the iron within the time specified in the contract: and this averment was denied by the defendants in their answer; and this was the question which ought to have been put to the jury. Instead of that the judge charged the jury that the principal question for them to decide was, " Have the defendants on their part during the sixty days demanded the iron; and in readiness to pay on their part, offered to pay the money on delivery." If this had been an action by the purchaser, against the seller, for the non delivery of the goods, the charge would have been right, because the purchaser is bound, on a contract of this kind, to show a readiness and an offer to perform before he can require the seller to deliver. Whichever party seeks to enforce the contract against the other must show performance or tender of performance. Until that be shown he is himself in default. The plaintiffs in this case are seeking to enforce the contract, and the judge should have told the jury that to entitle them to recover, they were bound to show an offer of performance, whether the defendants were ready or not. But the case was put to the jury on the question whether the defendants had offered to pay; and

Sel. IV.—65.

if they had not, the jury were instructed in effect to find for the plaintiff, whether he had offered to deliver or not, thus making the payment by the defendant a duty precedent to the delivery, when in truth it was concurrent merely; and allowing the plaintiff to recover in a case in which neither party had shown a readiness and offer of performance. In this the judge charged erroneously, and on this ground the judgment below must be reversed and a new trial ordered.

This is not done without some reluctance, because if the case had been properly left to the jury on the question whether the plaintiffs were ready and offered to perform on their part, we think the jury might well have found in their favor.

The plaintiffs sent to the defendants' office the bill for the iron, and the custom house permit, authorizing the delivery of the iron to Dunham & Dimon. It is said that this permit should have been endorsed by the plaintiffs: in other words that there should have been an order by Dunham & Dimon on the storekeeper for the delivery of the iron to the defendants. But the permit was not objected to on that ground. If it had been, the endorsement or order could have been immediately made or obtained And without it, the offer seems to have been sufficient, because payment by the defendants would have given them a title to the goods; and the contract of which the purchaser must be supposed to have the counterpart, together with the clerk's receipt for the money on the bill, and the unendorsed permit, would have entitled the defendants to the iron from the public storekeeper. These papers were equivalent to an order on the storekeeper for the delivery of the iron. But the bargain was in fact broken off because the defendants refused to pay the money on the delivery of the goods, and not because the custom house permit was unendorsed. Pettee, one of the defendants, told the plaintiffs' clerk that he wanted the iron to deliver to Wilson & Co., so that the defendants might raise the money by means of the notes which Wilson & Co. were to give for

Dunham *against* Mann.

it. The plaintiffs were excused from doing more than was actually done towards performance on their part by the virtual refusal of Pettee to pay, until he could raise the money on the notes he expected to get from Wilson & Co.; and by what was said by defendants' clerk after Pettee had gone, namely, that Pettee had left no check, and that it was useless to wait until he returned. It was shown that the storekeeper would have delivered the iron without payment of the storage due previous to the date of the contract. It was not necessary to bring the iron to the defendants' office and tender it there. The offer to deliver, seems to have been made in good faith and to have been a substantial compliance with the duty under the contract.

But the defendants are entitled to have this question submitted to a jury to be determined according to such evidence as may be produced on another trial.

GARDINER, JEWETT, JOHNSON and TAGGART, JJ., concurred with the chief judge.

MORSE and WILLARD, JJ., dissented, and were for the affirmance of the judgment.

MASON, J., did not hear the argument.

Judgment reversed and a new trial ordered.