Hardin, P. J.
—October 2, 1886, the parties to this action, entered into a written sealed contract set out in the amended complaint.
If. recites that Hogan had conveyed to Eyan the brick dwelling-house, known as No. 56 Gertrude street, and received from Eyan the deed for two dwelling-houses on Taylor street in exchange therefor, “ upon condition that said Burton would, within two months from this date, deliver to said Hogan, a deed of the premises known as No. 85 Warren street, now occupied by William P. Kelly and wife, subject to a mortgage of $4,600 and no more, and free from all other hens and incumbrances; and in consideration of said deed of said Warren street premises, said Hogan is to give a deed of said premises on Taylor street, this day received from said Eyan, subject to the existing liens at this date, as said Hogan received the same from Eyan, and in case of the default of said Burton to deliver to said Hogan, said deed within said time,’ he shall pay to said Hogan the sum of $1,200 for his equity in said Taylor street premises, and said Hogan shall deed the same to him, subject to the incumbrances existing thereon, as said Hogan received the same from said Eyan, the said Hogan to receive the said sum of $1,200 for said premises, free and clear of all commissions and expenses. And in *62 case the said Burton fails to perform, the said Hogan shall be entitled to recover the sum of $500 as liquidated damages. ”
After setting out the contract, the essential parts of which we have already quoted, the plaintiff, in his complaint, alleges that “he waited two months for said defendant to procure said deed of said Warren street premises, in accordance with said contract, but that defendant neglected and refused to so do.
“ That on the 2d day of December, 1886, the plaintiff duly tendered to defendant a deed of said Taylor street premises, and informed the defendant that plaintiff desired to perform his part of said contract.
“ That defendant then and there promised to pay within a few days the amount due plaintiff under said contract, to wit: the sum of twelve hundred dollars ($1,200.00).
“That plaintiff thereafter demanded of defendant that he perform said contract, but that he neglected and refused to do so. That by reason of the premises there became due and payable to plaintiff, by reason of his failure to perform said contract, the sum of five hundred dollars ($500) which he neglected and refuses to pay.”
It would seem from the tenor of the plaintiff’s complaint that he assumed that after the expiration of two months from the execution of the contract, that he was entitled to receive from the defendant a deed of the Warren street-premises, on condition that he deliver to the defendant a deed of the premises on Taylor street.
The plaintiff seems to have put a construction upon the contract calling for a tender of the deed of the Taylor street property as a condition precedent to receiving a. deed of the Warren street property from the defendant.
If we turn to the other stipulation in the contract, which provides for a contingency that might happen, that the defendant should not be able to convey the Warren street-property, we find that the parties stipulated that in that contingency the defendant was to pay the plaintiff the sum of twelve hundred ($1,200) dollars for his equity in said Taylor street premises, “ subject to the incumbrances existing thereon.”
Assuming that the defendant was totally in default under the contract, the plaintiff would be entitled to receive the $1,200 only upon the delivery of a deed to the defendant of the Taylor street premises.
Again, if we assume that by reason of the contract, the-plaintiff was entitled to receive the $500 mentioned in the-contract, an inspection of the language used by the parties seems to indicate that the $500 was to be given for a. “failure to perform said contract.” As we have already *63 seen the requirements of the contract on the part of the defendant were:
First. That he should give a deed of the Warren street property in exchange for a deed of the Taylor street property, and
Second. That in the event of the failure to give such deed of the Warren street property to the defendant, that the plaintiff should give a deed of the Taylor street property to the defendant upon receiving $1,200.
We are inclined to the opinion that the words “ failure to perform said contract ” relate to both alternatives, and that before the plaintiff is entitled to recover the same as liquidated damages, it was incumbent on him to show that the ' defendant had failed in both aspects of the contract.
Such seems to have been the construction put upon the contract by the plaintiff in his complaint, and by the course adopted upon the trial.
He averred that he had made the tender of a deed of the Taylor street premises on the 2d day of December, and the complaint seems to assume that upon such tender it was the duty of the defendant to pay the $1,200 as specified in the contract.
Indeed the plaintiff avers “that defendant then and there promised to pay within a few days, the amount due plaintiff under said contract, to wit, the sum of twelve hundred dollars ($1,200).”
In the trial it was not pretended that any actual tender was made of the deed to defendant after the 2d day of December, 1886. Plaintiff in his letter of December 15th, referring to the matter, states viz.: “ I wish to use the money very much. I would like to have it settled to-day.”
In his subsequent letters written probably on the lTth of December, to the defendant, he says: “ all that I wish to do is to carry out your contract with me. That “ I will insist upon being done at once.”
For the purpose of showing that a tender was made of the Taylor street property, the plaintiff called as a witness one Benedict, who was present at an interview between the parties, and he testified in respect to what occurred at said interview as follows:
“ Hogan said, although he didn’t think it was necessary to tender him a deed, that he had made and executed a deed and tendered it, and was there for the purpose of carrying out his contract; he offered the paper to Burton * * * I didn’t look at it; Hogan said it was a deed; I have forgotten whether Hogan mentioned the premises or not; Burton said he didn’t think the time was up, but if it was, he would take care of the matter in a few days.”
*64 In respect to that interview of the 2d day of December, 1881, Hogan was sworn as a witness, and testified as follows:
“ I asked Mr. Benedict to accompany me over to Burton’s office, so that in case I should have any trouble he might be a witness to the transaction; I tendered that deed to Mr. Burton; I said: ‘Mr. Burton, the two months is up,’ he took the deed and handed it back to me before I left; he said that he didn’t know that the time was up, he said he was short, and that he didn’t have any money; that he would call around in a few days and settle it; I waited a few days and wrote him a note to come and settle; he didn’t come; on the 16th of December I wrote him a letter. * * * Burton took the deed into his hands, looked it over, and then gave it back to me; I wanted the deed as long as he didn’t pay the money.”
In answer to the evidence given by the plaintiff upon the subject of tender, the defendant gave evidence tending to contradict that of the plaintiff, and he speaks of the interview had on the 2d of December, and says: “I asked him if the time was up, or if the sixty days had expired, or two months, and he said it had; ‘he said although the contract don’t call for it, I have made out a deed,’ and slipped something out of his overcoat pocket; didn’t take it out of his pocket; I said: ‘I am not ready to close it up at present;’ he said: ‘ When will you be ready?’ I said: ‘ I will .probably be ready in a few days;’ he said, ‘Will you be ready in a few days?’ I said: ' Perhaps so;’ he said: ‘ All right,’ and turned and walked out of the office; as he was going out of the door, he said: ‘I have got to use all the money I can get hold of at present, and I would like to have you close it up as soon as possible;’ the deed was not taken out of Hogan’s pocket; he didn’t come within six feet of me; I sat at the window in my office, and he came to the platform; I don’t know whether he had a deed or what it was. There never thereafter was a tender of the deed of the Taylor street property made to me.”
With such a conflict in the evidence as appears from the quotations we have made, it was for the jury to determine what actually took place on the 2d day of December, 1886, when the parties met, and whether or not in point of fact there was actually a tender made of the deed of the Taylor street property in accordance with the requirements of the stipulation of the contract.
There is a square conflict between the plaintiff’s testimony and the testimony given by the defendant on the subject of what took place, bearing upon the question of an actual tender.
The testimony given by the witness Benedict, is insuffi *65 cient to establish a tender according to the rule applicable to such cases.
To enable the plaintiff to recover a penalty or liquidated damages by reason of the defendant’s failure to perform, he “must show an exact and punctual performance on his part.” Dakin v. Williams, 11 Wend., 70; Lester v. Jewett, 11 N. Y., 453.
We are, therefore, of the opinion that the learned circuit judge, when he was requested to submit the question to the jury as to whether or not, “the plaintiff performed or offered to perform his part of the contract,” should have yielded to the request.
There was such a conflict in the evidence in respect to what actually transpired on the 2d day of December, 1886, as to make the question appropriately one for the jury.
It would have been within the province of the jury to accept the version of either party.
The mere extension of time does not dispense with the necessity “ of a strict performance at the time agreed upon by parole. ” The mere extension of time is not a waiver of anything. Friess v. Ryder, 24 N. Y., 369; Esmond v. Van Benschoten, 12 Barb., 366.
These views lead us to the conclusion that the learned trial judge fell into an error in directing a verdict for the plaintiff, and in holding as a matter of law, upon the evidence, that the plaintiff was entitled to recover liquidated damages in the sum of $500.
We must, therefore, order a new trial.
Judgment is reversed and a new trial ordered, with costs to abide the event.
Martin, J., concurs; Follett, J., dissents.
Martin, J.
I am of the opinion that the covenants in the agreement, upon which this action is brought, are mutual. The act to be done by one party is the consideration for the act to be done by the others. Both parties were to perform at the same time. It seems to be well settled that when the covenants between the parties are mutual, and both parties are to perform at the same time, neither party can maintain an action until he has performed, or tendered a performance on his part of the agreement. Johnson v. Wygant, 11 Wend., 48; Parker v. Parmele, 20 Johns., 130; Williams v. Healey, 3 Den., 363; Dunham Y. Mann, 8 N. Y., 508; Lester v. Jewett, 11 N. Y., 453; Kohner v. Higgins, 10 J. & S., 4.
Whether the plaintiff had tendered performance of his part, was a disputed fact in the case. The evidence of the plaintiff, if credited, established such tender. The evidence of the defendant tended to show that no such tender was made. This evidence presented a question for the jury, and *66 the court erred in refusing to submit that question to them. I, therefore, concur in the opinion of Hardin, P. J., that the judgment should be reversed, and a new trial ordered.