## CAMPBELL et al. v. MORAN BROS. CO

(Circuit Court of Appeals, Ninth Circuit. October 3, 1899.)

### No. 533.

1. CONTRACTS—CONSTRUCTION—PLACE OF PAYMENT.

A contract for the building at Seattle, Wash., of certain steamers to be used in navigating the Yukon river made the final payment therefor payable on delivery of the vessels, which was to be made at St. Michaels, Alaska, between which place and Seattle the only means of communication was by ship, requiring several weeks. The contract contained the further provision: "All payments to be made at Seattle, Washington, or with exchange." *Held*, that the latter provision did not govern as to the place of final payment, which, under the circumstances, as well as by a fair construction of the entire contract, was required to be made at St. Michaels, on delivery there of the vessels, with exchange on Seattle.

2. SAME—ACTION FOR BREACH—ISSUES AND PROOF.

A party contracting for vessels to be delivered to him at a certain time and place, and to be paid for on delivery, cannot maintain an action against the other party for damages for failure to deliver at the time agreed upon, without alleging and proving that he was able and ready to perform by paying the price at the time and place of delivery.

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

Ballinger, Ronald & Battle and Henry Hudson, for plaintiffs in error.

Harold Preston, E. M. Carr, L. C. Gilman, and S. H. Piles, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The plaintiffs in error instituted an action in the circuit court to recover damages against the defendant in error for breach of contract. It was alleged in the complaint: That on November 22, 1897, the defendant, Moran Bros. Company, a corporation, entered into a contract with James P. Light by which the former agreed to construct two stern-wheel steamers, one stern-wheel towing steamer, and three barges, each of dimensions and according to specifications attached to the contract, and to deliver the same to said Light at St. Michaels, Alaska, or at the mouth of the Yukon river, "on or before the opening of navigation at the mouth of the river in the early summer of 1898," delays "incident to the elements, or conditions over which the defendant had no control, alone excepted." The payment for said vessels was to be made in the sum of $116,500 in installments as follows: First, $6,000 upon execution of the contract; second, $20,000 within 60 days after date of signing the contract; third, $20,000 within 120 days after the signing of the contract; the fourth and final payment of $70,500 "payable upon the delivery of the vessels as herein specified; all payments to be made at Seattle, Washington, or with exchange." That on January 14, 1898, the said Light transferred and assigned to the Seattle & Yukon Steamship Company, a corporation, all his right, title, and interest in and to the said contract. That on February 22, 1898, the said steamship company and the defendant modified the contract, and agreed that the stern-wheel towing steamer be eliminated from the contract, and that another river steamer of the same dimensions and specifications as those provided for in the original contract be added at an additional cost of $20,500, making the total contract price $137,000, of which additional price $10,250 was to be paid on April 22, 1898; "the balance of total contract price, as modified above, to be paid on delivery of vessels at St. Michaels, as provided in original contract." That thereafter the said Seattle & Yukon Steamship Company entered into a contract with D. R. Campbell & Sons, the plaintiffs, whereby it was agreed that the latter should loan the said steamship company $50,000, a portion of which was to be paid to the defendant on account of the building of said steamers and barges, and a portion to the Progresso Steamship Company, a corporation, on account of a charter party whereby said Progresso Company chartered to the Seattle & Yukon Steamship Company the steamship Progresso. That said sum of $50,000 was to be advanced by plaintiffs at such times as the same might be necessary to meet the payments due or to become due to the defendant and the said Progresso Steamship Company. That to secure payment of said loan

the Seattle & Yukon Steamship Company, on January 14, 1898, sold and assigned to the plaintiffs all its right, title, and interest in and to its said contract with the said James P. Light. That the contract between said Light and the defendant was made with the intention of operating the boats and barges so to be constructed in the transportation of freight and passengers from St. Michaels, Alaska, to Dawson City, and to commence at the opening of navigation at the mouth of said river in the early summer of 1898, and that said river steamers and barges were to be used in connection with the boats and steamers to be operated at the same time by Light or his successors between Seattle, Wash., and St. Michaels, which the defendant well knew. The complaint then alleged that damages were sustained by reason of the failure to deliver the said steamers at the mouth of the Yukon river on or before the opening of navigation in 1898, or at any time prior to August 4, 1898, in the sum of $5,000 for loss in expenses and demurrage, the sum of $5,000 for the loss of the use of said steamers and barges for that season, and the sum of $51,000, the moneys paid to the defendant on the contract. Issue was taken by the defendant upon the allegation that it had failed to comply with the contract or that plaintiff had sustained damage thereby. Upon the trial of the cause upon the close of the plaintiffs' testimony the court instructed the jury to return a verdict for the defendant. It is assigned that this instruction was error.

The facts of the case, as they appear in the bill of exceptions, are substantially these: After the contract had been entered into, and after it was modified by the agreement of February 22, 1898, the Seattle & Yukon Steamship Company, at some time in February or March, 1898, notified the defendant that it would not require the three barges which were provided for in the contract, and wrote that it did not know what it would take in their place. Subsequently the defendant promised the steamship company that it would construct three smaller barges "if ten days' notice were given," the price to depend upon the size and tonnage. On May 4, 1898, the notice was given, but the smaller barges were never constructed, for the reason that the notice came late in the season, and the defendant was very busy. The correspondence showed that the price of the three large barges originally contracted for was $16,500. With the exception of the barges, the defendant constructed all the vessels provided for by the contract. The steamship company made its payments under the contract until the installment of $10,250, payable on April 22, 1898, fell due. That payment was not made, but shortly afterwards $5,000 was paid upon account. At about this time the Seattle & Yukon Steamship Company became financially involved, and probably insolvent. It informed the defendant that, unless some modification were made in the terms of payment provided for in the contract, it would be unable to comply therewith. Upon the trial of the action the steamship company admitted that at the time of the completion of the contract it was not in a position to accept and pay for the boats except upon the condition either that it be allowed to use the boats at St. Michaels on a trip from there to Dawson, and earn freight thereby, or that the plaintiffs Campbell & Sons would pay the

balance. The defendant in error refused to modify the terms of payment. About June 15, 1898, the Yukon river became open for navigation. At that time the defendant did not have the steamers at St. Michaels, ready for delivery, nor had the Seattle & Yukon Steamship Company any representative there to receive them. Its representative did not arrive until July 13, 1898. He heard there a report that the vessels had been lost. He remained there 24 hours, and thereupon returned to Seattle. On July 26th the steamers arrived at St. Michaels, and were ready for delivery. The steamship company had no representative to receive them, and delivery was never made. It is admitted that neither the steamship company nor its representative who went to St. Michaels had available cash funds exceeding $5,000 with which to meet the $69,000 payment which was due on delivery of the steamers. Up to this time the defendant had no information or notice of the assignment from the steamship company to the plaintiffs. When the steamship company's representative went to St. Michaels, he took with him two letters of instruction; one from the steamship company, the other from the attorney of the plaintiffs. The first was addressed to Robert Moran, an officer of the defendant corporation, and is as follows:

"In view of the possibility of your refusal to deliver to us at St. Michaels, or the mouth of the Yukon river, our three river steamers the Gustin, Light, and Campbell unless you are paid whatever sum you may claim to be still due from us under the terms of our contract as purchase money,—although such refusal would be a breach of contract on your part,—in order that there may be no delay in transfer of freight and passengers from the steamship Progresso, we have authorized our general manager, Geo. W. Grayson, Jr., to pay over to you certain drafts and cash amounting to about fifty thousand dollars ($50,000). Some of said drafts are payable at sight upon the arrival of our steamers at Dawson City. Should you not be willing to accept said drafts as cash, then we have authorized our said general manager to authorize and allow you to remain in general possession or control of steamers until their arrival at Dawson, and until the full amount which may be due upon the purchase price shall have been paid to you."

The second letter contained instructions for the representative. It rehearsed the terms of the contract and the assignment to the defendant. It contained the following:

"It might be that, when you arrive at St. Michaels, Moran Bros. Co. would insist upon the payment in full for all three river steamers upon their delivery, which I apprehend you will not be in a position to do." (Then follows instruction to charge Moran Bros. Company $16,500 for the nondelivery of the barges, and to release all equity and claim on the third river steamer, the contract price of which was $38,500.) "Then you could offer to pay him $5,000 cash at St. Michaels, and $26,000 at Dawson City, making $31,000 in all, which would amount to the sum, all told, including $51,000 paid at Seattle, to $82,000, which would be in payment of two river steamers, should Mr. Moran deliver them to you, and would be entirely satisfactory to D. R. Campbell & Sons. * * * Should he decline to do anything, say to him that D. R. Campbell & Sons will, of course, hold him to a strict accountability under the terms of their contract, and that you will proceed to Dawson City, collect the freight money, and return to Seattle, and there pay the same, holding Mr. Moran or Moran Bros. Co. accountable for all damages by reason of any failure on his part in any particular required by the written contracts."

The navigation of the Yukon river did not close until October 15, 1898. Each of the boats during the season made the trip to Dawson. One of them returned to St. Michaels.

The question which first presents itself is, where was the final payment on the contracts to be made? In the absence of an express provision in the contract, the final payment would have become due at the time and place of the completion of the undertaking by the other party to the agreement; that is, at the time and place of the delivery of the vessels. But both the original contract and the modification of it contain express provisions concerning the time and place of payment. In the first contract it was stipulated that the final installment was "payable upon delivery of the vessels as herein specified," and that the vessels were to be delivered "at St. Michaels, Alaska, or near the mouth of the Yukon river." The second agreement contained the following: "The balance of total contract price, as modified above, to be paid on delivery of the vessels at St. Michaels, as provided in the original contract." It is contended by the plaintiffs in error that these provisions are controlled by the express agreement contained in the first writing, but not in the second, which provides as follows: "All payments to be made at Seattle, Washington, or with exchange," and that thereby the contracting parties stipulated for the final payment at Seattle. But that provision does not positively call for the payment of all installments at Seattle. Payments are to be made at Seattle, "or with exchange"; that is to say, payments are to be made in such a way that the full amount thereof shall be net to Moran Bros. Company at Seattle. The reason for the provision is obvious. The first contract was made with J. P. Light, a citizen of Chicago, and the second was made with the Seattle & Yukon Steamship Company, a corporation of Arizona. There is no doubt that it was to the interest of Moran Bros. Company to save the exchange on all payments, and the stipulation was made for that purpose, and not for the purpose of prescribing a place of payment. No difficulty is found in so construing the three provisions as to payments as to give force to all, and there is nothing necessarily repugnant in them. It was evidently the intention of the contracting parties that the first payments might be made either at Seattle or elsewhere, as might be found convenient to the steamship company, but, if elsewhere, exchange to Seattle should be added, but that the final payment was to be made upon the delivery of the vessels. It was the largest payment of all. In the ordinary course of business such a payment would be simultaneous with the delivery. Not only do the contracts themselves contain clear evidence that this was the intention, but, if they had been ambiguous in their terms, the attending circumstances would clearly indicate such a construction. The delivery was required to be made at a distant port, with which there was no communication by telegraph, and from which no news could arrive at Seattle except by way of a sea voyage of several weeks' duration. It is not to be supposed that the defendant in error was to deliver the possession of the vessels without payment or security, and to await the final payment until the receipt of the news at Seattle that the delivery had been made. The contract specified in plain terms that the final payment was to be made "upon delivery of the vessels." The de-

97 F.—31

livery was to be made at St. Michaels. Consequently there was the place of the final payment.

Had the plaintiffs a cause of action for damages from the defendant's failure to carry out its contract and deliver the vessels at the stipulated time? The delivery of the vessels to the steamship company, and the final payment by the latter, were, as we have seen, concurrent acts. Neither party to the contract was required to trust the other. The delivery could not be demanded without the payment, nor could the payment be demanded without the delivery. Before the plaintiffs, or their assignor, the steamship company, could recover damages for a failure of the defendant to deliver the vessels at the time and place stipulated, it was necessary for them to allege and to prove that the steamship company was able and ready to make the final payment, which was a condition of the delivery. The elements of the damage must be certain. The plaintiffs could sustain no damage if neither the steamship company nor its assignee were ready upon their part to carry out the contract. Am. & Eng. Enc. Law (2d Ed.) 121; Hammond v. Gilmore's Adm'r, 14 Conn. 479; Dunham v. Pettee, 8 N. Y. 508; Hoyt v. Hudson, 12 Johns. 209; Dana v. King, 2 Pick. 155; Irwin v. Lee, 34 Ind. 319; Cole v. Swanston, 1 Cal. 51. The evidence, upon the plaintiffs' own showing, was that they were not ready. They had not the means to make the final payment. They sent an agent to St. Michaels to receive the vessels, but they provided him with only a small proportion of the funds necessary to close the transaction. He was instructed to solicit a compromise, to offer substitutes for a cash payment, and to obtain, if possible, the consent of the defendant to the elimination of one of the vessels from the contract, and to thereby reduce the final payment by more than one-half. It is contended that the plaintiffs themselves stood ready to furnish the steamship company the funds wherewith to make the final payment. The evidence leaves this doubtful, but, if it be true, it can have no bearing upon the present question. The defendant was entitled to payment upon the delivery of the vessels. The payment through the plaintiffs could not have been made at St. Michaels. They had made no preparation to meet such a payment there or elsewhere. If the plaintiffs contemplated making such a payment at all, it was only to be made after news should have reached them by course of mail from St. Michaels advising them that the defendant had refused the offers of compromise which the steamship company's representative was authorized to submit. It is not contended that the defendant was ever proffered payment through the plaintiffs, or that up to the time of the arrival of the vessels at St. Michaels it had ever been informed of the assignment of the contract to the plaintiffs. The plaintiffs, having failed to aver and prove a readiness upon their part or upon the part of the steamship company to comply with the terms of the contract, are in no position to demand damages for the nondelivery of the vessels. It becomes unnecessary, therefore, to consider whether the defendant's delay in producing the vessels at St. Michaels at the opening of navigation on the Yukon,

or prior to July 26, 1898, was a breach of the contract, or whether the time of the delivery was made of the essence of the contract. The other party to the agreement was not thereby excused from averring and proving its readiness to perform. Upon the case as presented the circuit court properly directed the jury to return a verdict for the defendant. The judgment will be affirmed.