WILKES and FONTAINE *against* FERRIS, Sheriff.

THIS was an action of *trover*, brought to try the right of the plaintiffs to 75 hhds. sugar, marked *B. E.* which had been levied on by the defendant, as the property of *Henry Cheriot*, under a *fi. fa.* in favour of *William Van Wyck*, against *Cheriot.*

A verdict was taken for the plaintiffs, subject to the opinion of the court, on the following case.

A debtor may lawfully prefer one creditor to another. A delivery of the key of the warehouse in which goods sold are deposited, is a sufficient delivery of the goods, to transfer the property. A delivery of the receipt of the storekeeper for the goods, being the documentary evidence of the title, is tantamount to a delivery of the goods.

Where, in an assignment of a debtor, in trust for several creditors, it was expressed to be *all* the property, goods, chattels, debts, &c. of the debtor, particularly specified in a schedule, annexed and referred to, this was held not to be a general assignment of all the debtor's estate, but was to be construed to operate only on the articles specified.

The resulting trust, or residuary interest, remaining to the assignor, after the purposes of an assignment, for the payment of debts, are satisfied, is not such an interest as can be taken and sold on execution; and unless the assignment be merely colourable, and for the sake of the resulting trust, it is not, on account of such residuary interest, void.

The plaintiff gave in evidence a *receipt*, signed by the defendant, and dated *July* 15th, 1808, of the amount of the execution, paid to him, without prejudice, in order to avoid a sale of the sugars ; and by which the defendants agreed to admit a demand and refusal of the property ; also a *receipt*, signed by *Isaac Sebring*, dated 21st *December*, 1807, acknowledging that he had received from *Cheriot*, on storage, the same 75 hhds. of sugar, to be at his disposal on paying the storage ; also, a *certificate*, signed by *I. Sebring*, *May* 7th, 1808, stating that the plaintiff (*Wilkes*) had exhibited to him, an assignment of the sugar, dated 6th *January*, 1808, made to the plaintiffs ; and that he acknowledged to hold for them, they paying the storage. *Cheriot*, by an indenture, dated 6th *January*, 1808, which recited that *Cheriot* was indebted in the several debts, in the schedule B. thereto annexed, and that being anxious to secure the payment of all the said debts, and having agreed to assign the property therein mentioned, to the plaintiffs, in trust, &c. He did, accordingly, assign to them, " all the goods, property, wares, merchandises, chattels, vessels, debts, sum and sums of money, claims and demands, and effects, belonging to, and now due and owing to, the said *Henry Cheriot*, or to which, and in which, he has any right, property, claim, or demand, which said goods, wares, and merchandises, hereby granted and sold, are particularly described and enumerated in the schedule A. signed by the said *Henry Cheriot*, and to these presents annexed, &c. and for greater certainty, and for a more full description of the same," he goes on and assigns specifically, the brig *Emmeline*, and the brig *Eliza*, and the freight due thereon, and the outward cargo of the *Eliza*, specified in the schedule C. annexed, and all sums due from the consignees of the said cargo, and the policies of insurance on the said brig, and on the ship *Mary*, and all sums due from the master of the ship *Polly*, &c.

&c. &c. upon *trust*, that the plaintiffs shall convert the property assigned into money, and to pay the bonds in schedule B. annexed; and all the notes, bills, acceptances and endorsements, in the said schedule specified; and a number of other specified engagements, not including, however, the debt due *Van Wyck.*

This assignment was executed and delivered by *Cheriot*, on the day of its date. *Cheriot*, about that time, became *insolvent*, and executed the assignment for the purpose of securing the creditors therein mentioned. He was, at the same time, indebted to *Van Wyck*, to the amount of the demand, for which the judgment was afterwards obtained. All the property specified in the assingment was stored in three stores, occupied by *Cheriot*, excepting the vessels and cargoes abroad, and excepting the sugars in question. At the time of executing the assignment, *Cheriot* delivered to the plaintiffs the *keys* of his stores, and *Sebring's* receipt for the sugars. On the 7th of *May*, 1808, the plaintiffs called on *Sebring*, to give him notice of the assignment, and to take a new receipt, which was given, as above mentioned. Immediately after giving this receipt, on returning to his counting-house, he found a letter from the defendant, saying he had levied on the sugar; and it was admitted, that such levy had been made, while *Sebring* was absent from his store, for the purpose of giving the receipt to the plaintiffs. The execution was issued on the 6th of *May.*

On the arrival of one of the vessels from abroad, mentioned in the schedule annexed to the assignment, the manifest was dated 15th *July*, 1808, and made out by the master, in the names of *Wilkes* and *Cheriot*; and on the 1st of *February*, 1808, the policy of insurance against fire was effected in the name of *Wilkes*, *Fontaine* and *Cheriot*, on the property assigned, and the premium was paid by *Cheriot.*

The jury found a verdict for the plaintiffs for 1,131 dollars and 17 cents.

*Hoffman*, for the plaintiffs. I can only anticipate and answer such objections as may be made on the other side.

1. That the assignment was fraudulent and void, because it assigned the whole property of the debtor to a particular creditor. If, however, the language of the assignment is duly considered, it will be found to be no more than an assignment of the goods specifically enumerated in the schedule. But admitting it to be an assignment of all the property of *Cheriot*, I am yet to learn that a debtor may not, *bona fide*, transfer all his property to a particular creditor, in payment of an individual debt, provided possession is also delivered. The statute of frauds, or the statute of *Elizabeth*, does not reach this case.* It is not a case of bankruptcy, nor within the spirit of the bankrupt law.

* *Cowper*, 432. 5 *Term Rep.* 235. 1 *Vesey*, jun. 280.

2. That there was such a resulting trust, or interest remaining in *Cheriot*, that it may be taken in execution. But I answer, that where goods are delivered to a trustee, under an assignment, they cannot be taken by execution in the hands of the trustee.†

† 2 *Anstruther*, 381. *Caillaud* v. *Estwick*.

3. Then was there a delivery of the property to the plaintiffs in this case? This is the only point in the cause; but the question, what is a delivery of goods, has been so often discussed in this court, that it is necessary only to refer to some of the cases decided.‡

‡ 2 *Caines*, 44. 2 *Johns. Rep.* 16. 3 *Johns. Rep.* 420.

When *Cheriot* parted with the receipt, he parted with his dominion over the goods, for *Sebring* would not deliver them, unless on the production of his receipt.§ It may be said, perhaps, that the plaintiffs should have given *notice* to *Sebring*, of the assignment and delivery of the receipt to them. The want of notice might, perhaps, excuse *Sebring* for delivering the goods to a third

§ 1 *Johns. Cases*, 156. 3 *Caines*, 186.

person; but it is a circumstance of which the other creditors cannot avail themselves.

*D. B. Ogden* and *Slosson*, contra. 1. It is true that one creditor may be, *bona fide*, preferred to others ; but the cases of this kind were those in which specific property was assigned to the particular creditor. In the present case, there is an assignment of *all* the property of the debtor; for though a schedule is referred to, yet if he possessed any article not contained in the schedule, the words of the assignment are broad enough to comprehend it.

It is admitted that such an assignment would be void, under the bankrupt law of *England.** It follows, we contend, that it must be also void, under the statute of frauds. By the statute of *James* I. c. 15. § 2. a fraudulent conveyance, made with intent to defeat or delay creditors, is declared to be an act of bankruptcy. By the act of the 13th *Eliz.* c. 5. § 2. made perpetual by the act of the 29th *Eliz.* c. 5. all conveyances, with intent to delay, hinder, or defraud creditors, are declared void. The bankrupt law, therefore, declared that such a conveyance as would be fraudulent, by the statute of frauds, shall amount to an act of bankruptcy. If, then, this assignment would be an act of bankruptcy in *England*, it follows, that it is void under the statute of frauds ; for the bankrupt law merely adds to the provisions of that statute, by declaring such fraudulent conveyances to be acts of bankruptcy.† The words in the two statutes are the same. Though every transfer of property from a debtor to his creditor, is not a fraud, or an act of bankruptcy ; yet if done by *deed*, it is void, and an act of bankruptcy.‡

* 1 *Burr.* 467.

† *Doug.* 86.

‡ *Cowp.* 123.

*Cheriot* was insolvent, and indebted to the judgment creditor, when he made this assignment. He transferred the whole of his substance to the plaintiffs, without any value being fixed, by which it could appear, whether

* 3 Co. 80. 1
Burr. 467. 2
Burr. 827. 4
Burr. 2235.
Cowp. 629.
7 East, 138.

there was enough to pay all his creditors. Since the time of *Twine's* case,* such a conveyance, by a debtor, in such circumstances, has been held to be fraudulent. If there is a trust reserved to the grantor in the conveyance, it is, *ipso facto*, void. A gift or *trust*, is not within the proviso of the statute. Trusts are express or implied; and *Coke* states a *bona fide* conveyance to be, where there is no *trust*, express or implied. In the present case, there is a trust, first to pay the plaintiffs, next to pay certain creditors, and, lastly, to the grantor himself. By this mode of transferring all his property to a particular creditor, the debtor *delays* his other creditors. Though a debtor may legally prefer a particular creditor, he must take care to do it in such a manner as not to injure other creditors. That is, he may deliver to a particular creditor specific property, to a specific amount; but he cannot transfer to him all his property. Suppose *A.* being indebted to various persons, conveys all his estate, of the value of 100,000 dollars to *C,* in trust to pay *C.* 10,000 dollars, owing to him, and the residue in trust for *A.* himself, would not this conveyance, if allowed to stand, hinder and delay the other creditors of *A.* in the recovering of their just debts? That the other creditors may be injured, is sufficient to render such a conveyance fraudulent and void. It was so decided in the case of *Wilson* v. *Warmal*,† soon after *Twyne's* case, on the principles of the common law, independent of any bankrupt law.

† *Godbolt*, 161.
8 *Jac.* I.

Again, there was a trust reserved to *Cheriot*, which was fraudulent. A deed which is fraudulent in part, is void *in toto;* for, as Lord *Coke*† observes, "the common law doth so abhor fraud and covin, that all acts, as well judicial as others, and which of themselves are just and lawful, yet being mixt with fraud and deceit, are, in judgment of law, wrongful and unlawful;" and the same doctrine is laid down by *Montague*, Ch. J. in the case of *Wimbish* v. *Tailbois*,§ "that covin may be where

‡ 3 *Coke*, 78.
*Farmers's* case.

§ *Plowden*, 54.

the title is good, and the title shall not give benefit to him that has it by reason of the covin, for the mixture of the good and evil together, makes the whole bad ; the truth is obscured by the falsehood, and the virtue drowned in the vice." It is a principle of the civil law, as well as of the common law, that where the grantee knows of the fraud in a part of the deed, he shall not, as *particeps criminis*, derive any benefit from such a deed. If the deed is not void under the second section of the statute, it is so under the first, which is explicit, though too often overlooked by courts of law. Though, at common law, a deed may be good in part, and void in part; yet if part of a deed is made void by statute, the whole must be void;* for a statute is strict law.

. 2. Again, there was, in consequence of the resulting trust to *Cheriot*, such an interest as might be taken in execution. The case of *Caillaud* v. *Estwick*,† which has been cited, is not in point. The debt for which the execution issued, arose in 1770, the lease was executed in 1784, and *Estwick* had possession under the lease, and received the rents and profits for five years, and released to Lord *Abingdon*, who, over and over again, offered to pay the judgment creditors out of other property. It was a lease of certain real estate ; not an assignment of all a man's property. Lord *Kenyon* said, " if the deed had been different from what it was, he should have been pressed by the argument, that there was a tenancy in common." By considering this as a tenancy in common, no injury is done to the plaintiffs, or the creditors intended to be preferred by the assignment. In the case of joint partners in trade, where judgment is entered against one of them, the share of the partner against whom the execution issues, may be sold.‡ An equity of redemption may be sold in execution.§

3. But if the assignment was not void by the statute of frauds, was there a sufficient delivery of the goods, to rebut the presumption of fraud ?¶ A symbolical de-

ALBANY,
Feb. 1810.

WILKES and
FONTAINE
v.
FERRIS.

* *Hob.*14. *Styles*, 428. 14 *Hen.* VIII. 15.

† 2 *Anstr.* 381 5 *Term Rep* 420. S. C.

‡ 2 Lord *Ray.* 871. *Salk.* 392. 1 *Vesey*, 242. §1 *Caines' Cases in Error*, 47. See also 3 *Johns. Rep.* 216. ¶ 2 *Term Rep.* 587.

ALBANY,
Feb. 1810.

WILKES and
FONTAINE
v.
FERRIS.

* 2 Bos. and
Bull. 59. 3 Esp.
Cas. 53.

† 1 Atkyns, 167.
Prec in Ch. 387.
1 Cranch, 309.
2 Term Rep.
462.

livery, in order to be effectual, must give the vendee a control over the property, as by the delivery of the key of the warehouse where it is deposited. The vendor must do every thing in his power to give, and the vendee to take, the possession.* No notice was given to *Sebring*, until four months after the assignment. During that time, *Cheriot* might have demanded the goods, and *Sebring* would have been bound to deliver them to him, or to his order. So that *Cheriot* may be said to have had a perfect control of the property. Though in the sale of a ship at sea, the delivery of the grand bill of sale is sufficient, yet the moment the ship arrives in port, the vendee must take possession.† Here was a *laches* on the part of the plaintiffs, in not giving notice to *Sebring*, of the assignment to them.

*T. A. Emmet*, in reply. 1. This was not an assignment of all the property of *Cheriot*. It did not include* his household goods. The general words in the deed, would not include property not contained in the schedule to which a reference is made. The subsequent specification must control the general words. But supposing this to be an assignment of all the property of the debtor, yet the statute of frauds expressly saves all conveyances made *bona fide*, and for a good consideration; though no such proviso is contained in the bankrupt law of *James* I. Though every act which is fraudulent under the statute of the 13th *Eliz.* will, when done by a trader, be an act of bankruptcy, and void by the statute of *James*, it does not follow, *è converso*, that every conveyance which is void under the bankrupt law, is also void under the statute of *Elizabeth*.

A debtor may assign the whole of his property to a particular creditor, if there be a delivery at the time, without its being considered a fraud, within that statute, though his other creditors may be thereby hindered or

‡ *Newland on Contracts*, 380, 381.

delayed in the payment of their debts.‡ The deed being

general, is not, *alone*, sufficient to avoid it. It is a mere circumstance to excite suspicion of fraud.

Lord *Kenyon*, in the case of *Nunn* v. *Willsmore*,* says, " that putting the bankrupt law out of the case, a debtor may assign all his effects for the benefit of particular creditors." Such an assignment is not within the words of the bankrupt law ; but it has been decided to be within the *spirit* of the statute of *James*, because the debtor thereby destroyed his capacity to carry on his trade. The distinction between the statute of frauds, and the bankrupt law, as laid down by Lord *Kenyon*, was adopted by the supreme court of *Pennsylvania*, in the case of *Wilt* v. *Franklin*,† which is a case strongly in point.

* 8 *Term Rep.* 528. 5 *Term Rep.* 530.

Again, it is said that every deed which reserves a trust to the grantor is void, as it respects creditors ; but this cannot be law. On this doctrine how stand deeds of settlement and mortgages ? The case of *Wilson* v. *Wormal*, cited from *Godbolt*, is given by *Roberts* in a note.‡ That case decided that where a man, having goods of the value of 20*l*. gave the whole to another to whom he owed 10*l*. with intent, that for the residue he should be favourable to him, the assignment was *altogether* void, because fraudulent in part ; for the grantee, as to the 20*l*. was a privy to the fraud. In *Styles*, (128.) it is said that *Rolle*, Ch. J. ruled, that a deed might be fraudulent in part, and good in part.

† 1 *Binney's Rep.* 502.

‡ *Rob. on Fraud. Conv.* 547. *note.*

There could be no valuation in this case. The assignment was in trust to sell the goods and pay certain debts, and account for the residue, if any. As it was impossible to know what would be the amount of the proceeds of the sale, it was requisite that the assignee should be required to account for any surplus.

Again, it is said there should have been an assignment of specific property, of a specific value, to the particular creditor. But no authority was cited in support of this doctrine, and the contrary is laid down by *Newland* before cited.

ALBANY,
Feb. 1810.

WILLES and
FONTAINE
v.
FERRIS.

* 2 Esp. Cases,
595.

2. There was a sufficient delivery of the goods. The case of *Searle* v. *Reeves** is precisely in point. *Eyre,* Ch. J. decided that a written order from the vendor, on the person who had the custody of the goods, directing him to deliver the goods to the vendee, was a sufficient delivery within the statute. If the delivery of the receipt of the storekeeper in this case was a valid delivery, at the time, no subsequent act of the grantor can avoid the transfer. In the case of a *symbolical* delivery, it is not requisite that the vendor should absolutely put it out of his power to commit a fraud ; for in the case of a delivery of the key of a warehouse, he might have two keys, and deliver one to the vendee, and one to another person, and thereby commit a fraud.

3. How can *Cheriot* be a tenant in common with the plaintiffs ? They have the entire legal estate. *Cheriot* is a mere *cestuy que trust.* A tenant in common must have a present right of enjoyment ; but *Cheriot* has no such right until all the other purposes of the assignment are fulfilled. It is a mere trust, as to *personal* property ; and there is no decision, that such a trust of personal property can be taken in execution. The case of *Estwick* v. *Caillaud* shows, that the personal property included with the real, could not be taken in execution, unless the trust deed had been proved to be void.

*Per Curiam.* This is a plain case. There is no colour or ground for the suggestion of fraud. *Cheriot* might lawfully prefer one set of creditors to another. The whole legal estate of the property specified (and the sugars in question were part of that property) vested in the plaintiffs. The object was lawful and just, and openly and fairly carried into effect. The goods in the storehouses were actually delivered, at the time, by the delivery of the keys of the stores ; and the sugars were delivered by the delivery of *Sebring's* receipt, which was the regular documentary evidence of title, and gave the plaintiffs the command of the sugars.

It would be a waste of time to take notice of all the cases which were cited, or which support this assignment. That of *Estwick* v. *Caillaud* (5 *Term Rep.* 420.) is very much in point, and fully establishes the plaintiffs' claim. This was not, in fact, a general assignment of *all Cheriot's* estate ; for though the words, in one place, be general, yet the assignment immediately goes on to specify, by a reference to the schedules annexed, the specific articles of property assigned ; and it therefore could operate only upon the articles specified ; for as the court said, in *Munro* v. *Alaire*, (2 *Caines*, 327.) if a general clause be followed by special words, which accord with the general clause, the deed shall be construed according to the special matter. *Cheriot* may have had a resulting trust, after the purposes for which the assignment was made were satisfied ; but such *residuum* of interest was not the subject of sale on *fi. fa.* (*Scot* v. *Scholey*, 8 *East*, 467.) The case of a sale of an equity of redemption of a mortgage of lands, is not at all applicable. Such a residuary interest necessarily arises in every case where property is assigned in trust to pay debts, or to satisfy other specified objects ; but unless the assignment be merely colourable, and made for the sake of the resulting trust, it is not void.

The plaintiffs must have judgment.

Judgment for the plaintiffs.