### SALMON et al. v. BRANDMEIER.

(Supreme Court, Appellate Division, Second Department. April 21, 1905.)

SALES—DELIVERY—ACCEPTANCE—WAREHOUSE ORDER.

    Defendant ordered five barrels of catsup of a broker, who sent the order to plaintiff, who sent defendant a warehouse order for fifty barrels. On receipt of the order defendant told the broker that he wanted only five barrels, and the broker told him to use the order to obtain the five barrels, and defendant did so. Plaintiff was never notified that defendant did not want fifty barrels, and there was no evidence that the broker was plaintiff's agent. *Held*, that defendant, by retaining the order, accepted and became liable for the entire fifty barrels.

Appeal from Municipal Court, Borough of Brooklyn, Second District.

Action by Hamilton H. Salmon and another against Philip Brandmeier. From a judgment for defendant, plaintiffs appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, and HOOKER, JJ.

Charles J. McDermott, for appellants.

Francis B. Mullin, for respondent.

HOOKER, J. On the 26th day of May, 1903, the plaintiffs wrote the defendant, doing business under the name of J. M. Baumann & Son, that they were in receipt of its order, through one Hendrickson, for fifty barrels of tomato catsup, and in accordance with the same they inclosed therewith their delivery order, and that the goods were sold on the basis of cash 15 days from delivery. The delivery order mentioned was a letter addressed to a warehouseman with whom the plaintiffs had deposited a large amount of catsup, directing him to deliver to Baumann & Son or order fifty barrels of catsup sent by the plaintiffs. On the back of this order Baumann & Son indorsed these words: "Please deliver to bearer 5 bbls. of this catsup and oblige." The five barrels referred to are the only barrels Baumann & Son ever actually received, and those were paid for. This action is brought to recover the contract price of the remaining forty-five barrels, less the price of ten barrels which were traced by the plaintiffs, and recovered from the possession of third parties. Thirty-seven days after the mailing of the order upon the warehouseman, Baumann & Son sent its check to the plaintiffs in payment of the five barrels it actually had, inclosing a letter, in which it was stated, "We wrote Mr. Hendrickson for a corrected bill and as yet have not received the same." The plaintiffs immediately replied that they hoped to receive a check

for the remainder of the goods, and requested Baumann & Son to communicate with their office in regard to the adjustment of these goods, "as Mr. Hendrickson never reported to us you wanted a corrected bill." Baumann & Son immediately wrote in answer that there seemed to be a misunderstanding all around, probably due to Mr. Hendrickson; that it never ordered fifty barrels from Hendrickson, and that when it received the order it was surprised; "and Hendrickson coming to our place the same morning said it was an error, and we should change the order to five barrels, which we done,' and that he would have a corrected bill sent us. We never bought over five barrels at a time, and cannot understand why he should put in an order for fifty barrels." The plaintiffs immediately replied that the order on the warehouseman for fifty barrels was sent direct by mail, and that they should hold Baumann & Son for the value of the full number.

One of the plaintiffs, called as a witness in their behalf, testified that he had known Mr. Hendrickson about 12 years, and the business of the latter was that of a broker in pickles, catsup, and articles of that kind. There is no suggestion in plaintiffs' case that Hendrickson was the broker or agent of Baumann & Son. There is a positive statement by one of the plaintiffs that Mr. Hendrickson was at no time in their employment, and was never a salesman or an agent for them. The plaintiffs base their right to recover on the trial of this action upon the receipt and retention of the warehouse order by Baumann & Son, and its actual use of part of the goods. Baumann & Son sought to escape liability for more than five barrels by showing that the plaintiffs, through Hendrickson, had authorized it to use the warehouse receipt for obtaining from the warehouseman the five barrels required. Mr. Baumann testified that when the order for the catsup was given to Hendrickson he said that "he had some catsup to sell—good catsup, sweet catsup—and he wanted to know how much we could use of it. We were in the market, and I told him we could use five barrels; if it was a good grade to send along five barrels; and he said he would." Two days thereafter Baumann & Son received the order upon the warehouseman for fifty barrels from the plaintiffs, and on the morning that this order was received Hendrickson called at Baumann & Son's place of business at about 10 o'clock. His attention was called to the discrepancy, and he then said there was some mistake, requested Baumann & Son to use fifty barrels, recommending it as high grade and at a cheap figure, and, Baumann & Son refusing, said: "You better send down and get five barrels, and in case you want the others you can let me know."

There is no suggestion by way of direct proof or circumstance in the defendant's case that Hendrickson was the broker to sell, or was in the employment or agency of the plaintiffs. His declaration that he had good catsup to sell could not bind the plaintiffs in any event, especially without information or knowledge of the declaration. And unless Hendrickson was the actual or ostensible agent for the plaintiffs, his conduct in authorizing Baumann & Son to change the order upon the warehouseman in case it did not wish

to purchase the whole fifty barrels did not bind the plaintiffs. Nor had the plaintiffs any information as to what course Baumann & Son was pursuing. Not until the expiration of 37 days after the delivery of the order upon the warehouseman to Baumann & Son did it advise the plaintiffs that it was not taking the full amount called for in the order. It might well be that if Hendrickson was acting within the actual or apparent scope of his authority in directing Baumann & Son to take five barrels of the order his conduct would have been binding upon the plaintiffs to effectuate the sale from the plaintiffs of but five barrels. This result, however, could not be attained without some proof upon which the court might find that Hendrickson was plaintiffs' broker.

As the case stands, the plaintiffs tendered fifty barrels of catsup to Baumann & Son. Where manual delivery of goods is inconvenient on account of their bulk, it is unnecessary; placing the goods in the power of the vendee is sufficient. An actual delivery is not required. A symbolic delivery suffices, and delivery of an order on the warehouseman may be enough. Dunham v. Pettee, 8 N. Y. 508. Generally speaking, an acceptance of property of defendants, without any offer to return at any time, deprives the vendees of a right to complain as to quality or quantity. Unless Hendrickson was plaintiffs' agent, the act of Baumann & Son, at least so far as the plaintiffs were concerned, was that of absolute ownership over the full fifty barrels of catsup. The indorsement on the warehouse order to deliver five barrels of this catsup to the bearer cannot be construed into a refusal to accept plaintiffs' offer to sell fifty barrels and an acceptance of an implied offer to sell five barrels, for this reason, if for no other: that it does not appear that the plaintiffs ever had notice of the indorsement on the warehouseman's order. By what right the warehouseman delivered forty-five of the remaining barrels to others than Baumann & Son, if he did so, presents a question which is aside from the issues in this case. Under the circumstances disclosed by the record, it is clear to us that the failure of Baumann & Son to return the order upon the warehouseman amounted to an acceptance of the goods, in the absence of any proof tending to show that Hendrickson was the agent of the plaintiffs when he stated to Baumann & Son to obtain the five barrels desired by means of the warehouse order for fifty.

The judgment should be reversed, and a new trial ordered; costs to abide the event. All concur.