The Turner-Looker Company, Plaintiff, v. Antonio Aprile, Defendant.

Fourth Department, March 16, 1921.

Sales — delivery — pleadings — action to recover price of goods tendered — allegation of time of performance unnecessary — tender of certified registered bonded warehouse certificates of whisky is equivalent to tender of whisky — passing of title — seller may sue for purchase price though whisky refused — Personal Property Law, section 144, subdivision 1, construed — judicial notice of meaning of " sale in bond " — evidence of custom not admissible — custom not shown — recovery of purchase price though whisky sold after action commenced where question not presented by pleadings.

In an action to recover the price of goods sold, begun after the goods had been tendered and refused, it is not necessary to allege in the complaint when the contract was to be performed.

There is a valid tender of delivery of whisky sold in bond by the tender of certified registered bonded warehouse receipts, regularly issued for whisky then in bond, which describe the brand of whisky, the serial number of each barrel, the warehouse stamp number on each barrel, and the number of gallons in each barrel.

Tender of performance, by the tender of delivery of the warehouse receipts, is equivalent to an actual delivery or a tender of physical delivery of the whisky.

The title to the whisky having passed to the defendant, the plaintiff had the right, under subdivision 1 of section 144 of the Personal Property Law, to sue for and recover the contract price of the whisky, even though the defendant had refused to accept it.

The court will take judicial notice of the fact that a sale of whisky in bond means a sale of whisky in a United States bonded warehouse, as described in the Internal Revenue Law.

Said term is so clear, definite and certain that it is not subject to change by evidence of custom or usage; furthermore, the evidence offered by the defendant fell short of the standard required in attempts to vary the meaning of words of a contract by evidence as to a custom.

The defendant cannot raise the question that after the commencement of the action for the purchase price the plaintiff disposed of the whisky, where defendant did not ask to amend his answer when that fact was brought out at the trial.

Kruse, P. J., and Clark, J., dissent, with memorandum.

Motion by the defendant, Antonio Aprile, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division, Fourth Department, in the first instance

after the direction of a verdict in favor of the plaintiff at the close of the case upon a trial before the court and a jury at the Livingston Trial Term in June, 1920.

*Averill & Tompkins* [*William H. Tompkins* of counsel], for the plaintiff.

*Dallas C. Newton,* for the defendant.

HUBBS, J.:

On the date of the sale involved in this case the plaintiff was a wholesale dealer in whisky at Cincinnati, O. The defendant was doing business in Rochester, N. Y. On May 8, 1918, the defendant wrote to the plaintiff asking for prices on eighty-proof whisky and on bond whisky. On May tenth the plaintiff telegraphed to the defendant as follows:

" CINCINNATI, OHIO, *May* 10, 1918.

" ANTONIO APRILE, 175 Jay St. cor. Kent, Rochester, N. Y.:

" Letter received. Best price on Eighty proof six aught five. Can furnish you also fine Kentucky Whiskies Spring Sixteen or Seventeen at Three Ten per gallon in Bond. Spring Thirteen or fourteen at Three Dollars. These prices good today only. Wire us our expense your order. Market will advance again within twenty-four hours and prices will be withdrawn unless we hear from you today

" Charges Paid.          THE TURNER-LOOKER CO."

On the same day the defendant replied by telegram as follows:          " GENESEO, N. Y., *May* 10, 1918.

" THE TURNER-LOOKER Co., Cincinnati, O.:

" Telegram received. I will take ten Barrel Kentucky Whiskey Spring Thirteen at the price of Three Dollars in Bond per Gallon.          ANTONIO APRILE."

On the next day the plaintiff wrote the defendant stating that it inclosed invoice covering ten barrels of spring thirteen Kentucky whisky at three dollars per gallon and stating that it would draw for the amount through the Lincoln National Bank. The defendant testified that he did not receive that letter. On the same day the plaintiff made a draft on the defendant for $1,466.97, and attached to the draft a bill for 503.77 gallons of whisky at $3 per gallon, amounting

to $1,511.31, less $44.34, the amount due the warehouse for storage and local taxes, leaving a balance of $1,466.97, the amount of the draft. There were also attached certificates for ten barrels of Kentucky whisky, which certificates were properly indorsed. The certificates described the barrels so that they could be identified. The warehouse stamp number and the serial number of each barrel appeared on the certificates. The certificates were issued in accordance with the provisions of the United States Internal Revenue Law.

On May thirteenth the bank notified the defendant that it held the draft with warehouse receipts attached. The defendant returned the notice indorsed as follows: " Please return this draft back and oblige, A. Aprile." On May twenty-ninth the plaintiff wrote to the defendant demanding pay for the whisky, the defendant did not reply and this action was commenced.

The complaint alleges the agreement to purchase and sell ten barrels of whisky at $3 a gallon in bond and states that the net amount agreed to be paid for said whisky was $1,466.97. It alleges that the plaintiff, through the Lincoln National Bank, tendered to the defendant the warehouse receipts for said whisky upon the payment of said amount and that the defendant refused to accept said receipts and has since refused to accept said whisky and pay for the same; that the plaintiff holds said whisky for said defendant and is ready and willing to deliver the same upon the payment of the purchase price. The answer contains the following admission: " Admits that on or about May 16, 1918, said plaintiff and said defendant entered into an agreement whereby said plaintiff agreed to sell and said defendant agreed to purchase ten barrels of Kentucky whisky, Spring 1913 or 1914, at the agreed price of Three Dollars per gallon." The answer then alleges that the plaintiff has not complied with the terms of the agreement, that it has never delivered or offered to deliver said whisky to the defendant.

At the opening of the case the defendant moved to dismiss the complaint upon the ground that it did not state facts sufficient to constitute a cause of action, first, because there was no allegation as to delivery, and, second, that the complaint did not allege when the contract was to be performed. There is no force in the second ground as the law implies, in

the absence of such a term, that delivery was to be made in a reasonable time. The other ground stated involves the question, to be hereafter discussed, as to whether or not the tender of the warehouse receipts constituted a tender of delivery or delivery of the whisky. The motion to dismiss the complaint was denied with an exception. At the close of the plaintiff's case a motion was made for a nonsuit, which was denied, and that motion was renewed at the close of all of the evidence at which time the plaintiff moved for a directed verdict. The defendant then asked to go to the jury upon one question only: " Whether, under all the proof here, there was a delivery of the goods in question under the custom prevailing in regard to the marketing of that particular sort of commodity. "

There can be no question but what the telegrams constituted a definite and certain offer and acceptance and, as a result, a contract was completed whereby the plaintiff agreed to sell to the defendant ten barrels of Kentucky whisky, spring thirteen, for three dollars a gallon, in bond. It is undisputed that at the time the plaintiff mailed to the Lincoln National Bank the draft, with the bill and the warehouse receipts, it owned the ten barrels of whisky described in the telegrams and that the same was in bond at New Haven, Ky., in the warehouse of J. N. Blakemore, Incorporated. The receipts in question were regularly issued by J. N. Blakemore, Incorporated. They described the brand of the whisky, the serial number on each barrel, the warehouse stamp number on each barrel, the number of gallons in each barrel, and the receipts had been duly registered on the books of the Equitable Trust Company of New York, and each bore the certificate of the trust company to that effect. They were properly indorsed so that, upon delivery, the defendant could have taken the receipts and identified the whisky. There was nothing more to be done by the plaintiff as vendor. The particular ten barrels had been segregated and identified, the evidence of the same had been forwarded to be delivered to the defendant upon the payment of the price. There was nothing that remained to be done by the defendant, except to pay the purchase price agreed upon. Under such circumstances, the tender of the bonded warehouse receipts constituted a valid

tender of delivery of the ten barrels of whisky in question, and the tender of performance, by the tender of delivery of the warehouse receipts, was equivalent to an actual delivery or a tender of physical delivery of the whisky in question. (*Wilkes* v. *Ferris*, 5 Johns. 335; *Mackie* v. *Egan*, 6 Misc. Rep. 95; *Dunham* v. *Pettee*, 8 N. Y. 508; *Hankins* v. *Baker*, 46 id. 666; *Hayden* v. *Demets*, 53 id. 426; *Salmon* v. *Brandmeier*, 104 App. Div. 66; *Horst* v. *Montauk Brewing Co.*, 118 id. 300; *Miller* v. *Ungerer & Co., No. 1*, 188 id. 659; *Kessler & Co.* v. *Veio*, 142 Mich. 471; 30 Am. & Eng. Ency. of Law [2d ed.], 71.) There was a binding, legal contract and a legal delivery, or a constructive delivery, under that contract, and upon the failure of the defendant to pay for the goods and to take them, the plaintiff was entitled to recover in an action against the defendant for the breach of the contract.

It is urged by the defendant, however, that the trial court adopted an illegal measure of damages. It is doubtful if that question is here, as the only question which the defendant asked to go to the jury upon was whether or not there was a delivery of the goods in question. However, I am satisfied that the court adopted the correct measure of damages.

Section 144 of the Personal Property Law (as added by Laws of 1911, chap. 571) contains the following provisions:

" § 144. Action for the price. 1. Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods.

" 2. Where, under a contract to sell or a sale, the price is payable on a day certain, irrespective of delivery or of transfer of title, and the buyer wrongfully neglects or refuses to pay such price, the seller may maintain an action for the price, although the property in the goods has not passed, and the goods have not been appropriated to the contract. But it shall be a defense to such an action that the seller at any time before judgment in such action has manifested an inability to perform the contract or the sale on his part or an intention not to perform it.

" 3. Although the property in the goods has not passed,

if they cannot readily be resold for a reasonable price, and if the provisions of section one hundred and forty-five are not applicable, the seller may offer to deliver the goods to the buyer, and if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price."

The plaintiff in this case elected to bring his action for the purchase price of goods sold and delivered on the theory that the title had passed. Prior to the enactment of said Personal Property Law it was undoubtedly the common-law rule in this State that the vendor, at his election, in all cases where the title to the property had passed, could sue and recover the contract price even though he retained the actual, physical possession of the property, in which case he held the goods as trustee for the buyer. (*Hayden* v. *Demets*, 53 N. Y. 426; *Mason* v. *Decker*, 72 id. 595; *Ackerman* v. *Rubens*, 167 id. 405; *Phelps-Stokes Estates* v. *Nixon*, 222 id. 93; Bogert Sale of Goods in New York, 243.)

In *Hayden* v. *Demets* (*supra*) the court said: " Upon a valid sale of specific chattels, when nothing remains to be done by the vendor except delivery, whether conditioned upon payment or not, the right of property passes to the vendee, at whose risk it is retained by the vendor. The same consequence as to title results from a valid tender, upon an executory contract. Upon the refusal of the vendee to accept and pay the price, the vendor, upon proper notice, may sell the property and recover the difference, or he may sue for the difference between the contract and actual price, in which case he elects to retain the property as his own, or he may recover the contract price, in which case he holds the property as trustee for the vendee, and is bound to deliver it, whenever demanded, upon receiving payment of the price. In selling the property after tender and refusal, the vendor acts as the agent and trustee of the vendee, to whom the title is deemed to have passed by the tender. The right of the vendor to recover the price of the goods, if he chooses to risk the solvency of the vendee, necessarily results."

It seems to be clear that where the title has passed, the vendor may now, under subdivision 1 of section 144, sue and

recover the purchase price as at common law, even though the vendee has refused to accept the goods and to pay the purchase price. (*American Aniline Products, Inc.,* v. *Nagase & Co., Ltd.,* 187 App. Div. 555; *Miller* v. *Ungerer & Co., No. 1,* 188 id. 655; *Ferry* v. *South Shore Growers & Shippers Assn.,* 189 id. 542; *Phelps-Stokes Estates* v. *Nixon, supra.*)

It is undoubtedly true that subdivision 3 of section 144 of the Personal Property Law changed the New York rule which permitted a recovery of the purchase price in an action for goods sold and delivered in certain cases where the title had not passed. The case of *Ideal Cash Register Co.* v. *Zunino* (39 Misc. Rep. 313) and the cases there cited, illustrate the kind of cases which have been affected by subdivision 3, and it has been held that in cases falling under subdivision 3, where the title has not passed, the vendor cannot maintain an action for the purchase price unless the case is one of those referred to in said subdivision, that is, that the property in question cannot readily be resold for a reasonable price and the seller has offered to deliver the goods to the buyer who has refused to receive them, and the seller has notified the buyer that he holds the goods as bailee for the buyer. There are certain expressions in some opinions which, standing alone, would indicate that an action could not be maintained for the purchase price under subdivision 1 unless the purchaser had actually received and taken possession of the goods. It will be found, however, upon an examination of those cases, that the court held in each instance that the title had not passed from the vendor and therefore, subdivision 1 was not applicable. (*Mosler Safe Co.* v. *Brenner,* 100 Misc. Rep. 107; *Crown Electric Illuminating Co., Inc.,* v. *Chiariello,* 106 id. 511; *Prager* v. *Scheff & Co., Inc., No. 1,* 107 id. 500; *Harbison* v. *Propper,* 112 id. 588.)

Bogert in his work on the Sale of Goods in New York (at p. 246) in a note to section 144, says: " The New York rule upon this subject has been greatly modified by the Sales Act. Now only in cases where the goods ' cannot readily be resold for a reasonable price ' may the seller force the title on the buyer and recover the price of him. Formerly he could recover the price in all cases after due tender."

This statement, standing alone, would be confusing, but it

is to be noted that the statement is contained in note No. 3, commencing at page 245. The headline of that note is as follows: "Action for price when title has not passed." The author undoubtedly had in mind that under the common law in this State the vendor could, in certain cases, recover in an action for goods sold and delivered, the purchase price even where the title had not passed, and it was that rule of law which he meant to say had been changed by the statute in question, as is illustrated by the cases last above cited.

I do not think that there was any error in directing a verdict for the plaintiff. There is no sufficient evidence in the record to make a question of fact upon the question of custom upon the sale of whisky in bond. I think the court ought to take judicial cognizance of the fact that the sale of whisky in bond means a sale of whisky in a United States government bonded warehouse, as described in the Internal Revenue Law, and that the term is so clear, definite and certain that it is not subject to change by evidence of custom, but aside from that, the evidence in this case falls far short of the standard required by the law in attempts to vary the meaning and words of a contract by evidence as to custom and is contradictory to the provisions of the Federal statute governing the storage of whisky in bond. (U. S. R. S. § 3271; U. S. Comp. Stat. 1916, § 6009; 4 Fed. Stat. Ann. [2d ed.] p. 37, § 3271.) It is apparent that the defendant knew the difference between the purchase of whisky in bond, and the purchase of other whisky, because in his letter he makes the distinction between eighty-proof whisky and whisky in bond, and in the telegram of the plaintiff to the defendant the same distinction is made, for the price of eighty-proof whisky was quoted at six dollars and five cents, while whisky in bond was quoted at three dollars, though the whisky in bond was higher proof, higher quality and more expensive whisky than eighty-proof whisky, which was so low in quality that it could not be kept in bond. It must have been clear to the defendant that on the eighty-proof whisky the tax was added to the selling price, while on the whisky in bond the tax was not added but the whisky was sold in bond subject to the government tax. It seems to me that, under such circumstances, evidence of custom given in this case was not sufficient to make a question of fact for the jury.

It is urged by the appellant that, as the evidence discloses that prior to the trial the plaintiff sold the whisky in question and was not in a position, therefore, to hold it as agent or trustee for the defendant, to be delivered to him upon the payment of the judgment, a recovery should not be permitted for the purchase price. No such question was suggested by the pleadings. The complaint alleged that the plaintiff held such whisky for the defendant. At the time of the commencement of the action that was true but the cross-examination of the vice-president of the plaintiff disclosed the fact that about eight months after the commencement of the action the plaintiff sold the whisky for ninety-five cents a gallon. The defendant did not ask to amend his answer and the case was properly disposed of on the pleadings. The plaintiff had elected to bring its action for the purchase price and fixed the title of the whisky in the defendant, and it may be that when it sold the whisky for ninety-five cents a gallon it was selling the defendant's whisky without authority and would be liable to the defendant for all damage caused to him thereby, but that question was not pleaded or litigated. Possibly the defendant was unwise in refusing to accept the offer of the plaintiff to permit him to amend the answer and set up his damages. Having failed to do it, however, he cannot raise the objection now. The cases seem to be conclusive upon this question. (*Schepp Co.* v. *Far Eastern Mfg. Co.*, 168 N. Y. Supp. 636; *Stokes* v. *Mackay*, 147 N. Y. 223.)

While the result in this case may seem to be a hardship upon the defendant it is brought about by his own conduct and not by the law. I see no way to relieve him from the penalty that he incurred in violating his contract and I advise that the defendant's exceptions be overruled and a new trial denied and judgment directed for the plaintiff upon the verdict, with costs.

All concur, except KRUSE, P. J., and CLARK, J., who dissent in a memorandum by KRUSE, P. J.

KRUSE, P. J. (dissenting):

The serious question is whether the tender of the warehouse receipt for whisky in a bonded warehouse in the State of Kentucky passed the title to the defendant against his will. If the contract had been for the specific whisky covered by

the warehouse receipt the place of delivery would be at the warehouse where the whisky was in bond, in the absence of any contract to the contrary. (Pers. Prop. Law, § 124, as added by Laws of 1911, chap. 571.) But it was not. In such a case, in the absence of any agreement or usage of trade to the contrary, the place of delivery was at the plaintiff's place of business at Cincinnati. (Pers. Prop. Law, § 124.)

While the testimony of the plaintiff of trade usage is not very clear, it is in harmony with the rule just referred to and sufficient, in connection with the other circumstances, as it seems to me, to sustain a finding that it was the intention of the parties that the plaintiff should take the whisky out of bond wherever it might obtain the same, deliver it to a carrier at Cincinnati consigned to the defendant, and draw on him for the amount of the purchase price and Federal tax, attaching the draft to the bill of lading, as the defendant contends. Otherwise the defendant might have to pay the transportation charges from any place where whisky of this description might be stored in bond.

Furthermore, the plaintiff, instead of keeping the whisky on hand for the defendant, has disposed of it. While perhaps this may not of itself bar a recovery for the purchase price since such disposition was after tender and commencement of the action (*Stokes* v. *Mackay*, 147 N. Y. 223, 236), it would seem to be at least a circumstance in support of the defendant's contention. Selling the whisky to others, as plaintiff did, is entirely inconsistent with its claim that the title passed to the defendant and became his property.

While the complaint alleges that the plaintiff holds the whisky for the defendant and is ready and willing to deliver the same, this allegation is denied in the answer, and the undisputed proof is to the contrary and was received without objection.

I think the direction of the verdict was erroneous and a new trial should be granted.

CLARK, J., concurs.

Defendant's exceptions overruled, motion for new trial denied, with costs, and judgment directed for the plaintiff upon the verdict, with costs.