Rosenberg Bros. & Co., Respondent, *v.* F. S. Buffum Company, Inc., Appellant.

First Department, January 13, 1922.

Sales — action to recover purchase price of goods shipped on bill of lading consigned to seller or order not maintainable under Personal Property Law, § 144, subd. 1 — title remained in seller under Personal Property Law, § 101, subd. 2 — seller's remedy is action for damages for refusal of buyer to accept — measure of damages — point of destination not specified in contract — tender of bill of lading of goods shipped to buyer's place of business not good in absence of refusal of buyer to designate point of shipment — agent of defendant had power to make contract — rejection on ground that agent had no authority to make contract not waiver of objection that goods were shipped without instructions.

A seller of goods cannot maintain an action under section 144, subdivision 1, of the Personal Property Law, to recover the purchase price of goods where it appears that the goods, which were readily resalable, were shipped on a bill of lading consigned to the seller or order and were rejected by the buyer, since, by virtue of subdivision 2 of section 101 of the Personal Property Law, the title to goods so shipped remains in the seller and does not pass to the buyer.

*It seems*, that the seller's remedy in such a case is an action to recover damages for failure to accept the goods, in which case the measure of damages would be the difference between the contract price and the market price.

As the contract of purchase did not specify the point of destination but clearly contemplated that the buyer was to designate the route and the carriers, with the exception of the initial carrier, the shipment of the goods to New York city, the buyer's general place of business, without instructions from the buyer and the tender of the bill of lading on said shipment, was not a good tender of the goods.

The evidence fully sustains the finding of the jury that the agent of the defendent, the buyer, had authority to make the contract and the goods were not properly rejected on that ground.

The fact that the goods were rejected on the ground that the agent had no authority to make the contract did not waive the objection that the goods were shipped to New York without instructions, as the defendant had no knowledge at the time the goods were rejected of the terms of the contract, and a waiver can only be found from an act done with intention to waive.

Appeal by the defendant, F. S. Buffum Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of New York on the 10th day of March, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the 14th day of February, 1921, denying defendant's motion for the issuance of a commission to take the testimony of a witness in South America.

*Chester R. Carleton* [*Thomas Fleming Walsh* of counsel; *F. X. Carmody* and *George A. McLaughlin* with him on the brief], for the appellant.

*Joffe & Joffe* [*Joseph Joffe* of counsel], for the respondent.

SMITH, J.:

The verdict of the jury represents the purchase price of two carloads of dried prunes, which the plaintiff agreed to sell and the defendant agreed to buy. The contract was executed April 23, 1919. It provided for the purchase by the defendant and the sale by the plaintiff of California dried prunes as per variety, style and package and prices named. The destination was left blank. The routing was left blank, and after the printed words " consigned to," there was a blank. That blank was not filled in. The time of shipment was October-November, seller's option. There was then stated the specification of the goods ordered. Under the heading " terms," the contract provides: " F. O. B. Pacific Coast Rail Shipping Point. Cash less two per cent (2%) if draft is paid within ten (10) days from date thereof, otherwise net cash thirty (30) days after date of draft, unless shipment arrives prior thereto in which case payment shall be made within three (3) full business days after arrival. Payment to be made against drafts with documents attached in New York, Chicago or San Francisco Exchange, or equivalent." Under the heading " routing " in the contract the following provision appears: " Seller shall, where possible, recognize routing named by Buyer, but Seller has option of selecting the initial line. Should Buyer divert goods while in transit without Seller's consent, Seller shall be relieved of all responsibility for quality and/or condition. Change in routing from rail to

water shipment (if requested) is subject to Seller's confirmation, Buyer assuming freight to and charges at Dock, State Toll, and all unloading and/or loading charges at Port. On such water shipments and on shipments to be made via Gulf Lines, the provisions of this contract shall be modified and superseded by the terms and conditions contained in the form of contract of the Seller, effective June 2nd, 1919, known as Dried Fruit Association of California Water Shipment Contract; but if at any time within ten (10) days prior to final shipping date it be found impossible by reason of blockade or embargo to ship via Gulf Lines, Seller shall notify Buyer, and in the absence of immediate instructions to ship via another route then open or to store goods for Buyer's account, the Seller shall be privileged to ship by any rail route at current freight rates. Should it be found impossible by reason of aforesaid causes to ship all rail, Seller shall then be privileged to store and insure at Buyer's expense. If goods are shipped all rail the terms and conditions of this contract shall apply; if stored, Buyer agrees to pay Seller's draft at two (2) days' sight, less two per cent. (2%) discount, to which shall be attached (in addition to the weight and quality certificates provided by said Water Shipment Contract) Warehouse Receipt and Fire Insurance Certificate." Under the heading "responsibility" the contract provides as follows: "Notwithstanding shipped to Seller's order, goods are at risk of Buyer from and after delivery to Carrier, and Buyer hereby assumes responsibility as to shortage, loss, delay or damage in transit upon issuance by Carrier of clean Bill of Lading or Shipping receipt. Goods are at Buyer's risk when delivered at his request to a third party."

This contract was signed by the defendant and by the plaintiff through a broker, M. W. Houck & Bro. The plaintiff-seller in November placed the goods upon the cars in California, receiving a bill of lading which called for a shipment of the goods to New York city, but the bill of lading was to the consignee or order, and in the bill of lading the plaintiff-seller was named as the consignee. The bill of lading, indorsed in blank, was presented to the defendant, who refused to accept the same, and plaintiff thereupon brought this action for the purchase price as for goods sold and delivered.

Section 144 of the Personal Property Law (as added by Laws of 1911, chap. 571) provides, in subdivision 1, as follows: " Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods." Subdivision 2 has no relevancy to this case. Subdivision 3 then provides: "Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of section one hundred and forty-five are not applicable, the seller may offer to deliver the goods to the buyer, and if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price." Under section 156 (as added by Laws of 1911, chap. 571), property is defined to mean the general property in goods, not merely a special property. Under section 101, subdivision 2 (as added by Laws of 1911, chap. 571), it is provided: " Where goods are shipped, and by the bill of lading the goods are deliverable to the seller or his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract."

The 1st subdivision of section 144 is in all material respects similar to subdivision 1 of section 49 of the English Sale of Goods Act (56 & 57 Vict. chap. 71). Under that subdivision it has been held that this, as an affirmative provision, necessarily implied a negative, that unless the seller has passed the property to the buyer he cannot maintain an action for the price. (*Atkinson* v. *Bell*, 8 B. & C. 277; *Elliott* v. *Pybus*, 10 Bing. 512; Williston Sales, 947, and cases cited in note 20.) There is no claim here that the property was not readily salable upon the market, so that the plaintiff cannot base its right upon subdivision 3 of section 144. Its right must be based solely upon subdivision 1 of section 144, upon the ground that the property

in the goods has passed to the buyer. But by subdivision 2 of section 101, where, as in the case at bar, the bill of lading is made out to the seller or order, it is provided that the seller reserves the property in the goods, although that reservation is simply for the purpose of securing performance by the buyer of his obligations under the contract. Whatever may be the purpose of such a reservation, it seems to me clear that the property cannot be reserved and at the same time pass to the buyer. The buyer does not get the general property in the goods. He gets simply a special interest in the goods, which is more than a contract right. A contract right could not be enforced by specific performance. But the buyer in such a case as this could, at any time, tender the purchase price and recover the goods under the special property right which he has under this provision in section 101. This special interest, however, is very different from the general interest a buyer gets when property passes. But in the subdivision quoted from section 101, a conclusive interpretation would seem to be given to subdivision 1 of section 144, giving the right to the seller to recover the purchase price when the " property in the goods has passed " to the buyer. The provision in subdivision 2 of section 101 provides that under such a bill of lading the seller " reserves the property in the goods," and further says: " But if, except for the form of the bill of lading, the property *would have passed* to the buyer on shipment of the goods," the seller's property shall be for a specific purpose. This is a clear recognition that under that form of a bill of lading " the property " does not pass to the buyer on the shipment of goods. Section 144, subdivision 1, gives to the seller the right to recover the purchase price only when the general property in the goods has passed to the buyer.

This interpretation of the rule under subdivision 1 of section 144 is further indicated by a reference to the decisions and statutes showing the development of this branch of the law. The provisions of our Personal Property Law which relate to the sale of goods were taken from the Uniform Sales Act, which had been adopted by various States of the Union before it was adopted, with some slight modifications, by our Legislature. The Uniform Sales Act had in it a provision that it should be known as the Sales Act. That act was taken from

the English Sale of Goods Act, with some modifications. Subdivision 1 of section 144 appeared in the English Sale of Goods Act as section 49. Subdivision 3 of section 49 of the English Sale of Goods Act is not relevant. In England, therefore, in order to recover the price of goods the property must have passed to the buyer, and there was no provision that, in case the goods could not be readily resold in the market, the seller might force title upon the buyer by offering him the goods, and thereafter holding them for his use. Under the common law in this State before the amendment of the Personal Property Law in 1911, a rule was developed which allowed a seller to tender to the purchaser the goods specified in a contract to sell or of sale, and in case of the buyer's refusal to accept the same, the seller might thereafter treat the goods as the goods of the buyer and recover the price therefor. This was held in *Bement* v. *Smith* (15 Wend. 493) and in *Dustan* v. *McAndrew* (44 N. Y. 72) and in *Ackerman* v. *Rubens* (167 id. 405). In the case of *Dustan* v. *McAndrew*, Commissioner Earl, in writing for the court, said: " The vendor of personal property in a suit against the vendee for not taking and paying for the property, has the choice ordinarily of either one of three methods to indemnify himself. (1) He may store or retain the property for the vendee, and sue him for the entire purchase price. (2) He may sell the property, acting as the agent for this purpose of the vendee, and recover the difference between the contract price and the price obtained on such resale; or (3) He may keep the property as his own, and recover the difference between the market price at the time and place of delivery and the contract price." The first remedy, allowing him to store and retain the property for the vendee and sue him for the entire purchase price, as stated by Commissioner Earl, would seem, under the cases, to depend upon a tender or upon some excuse for not tendering the goods, as the expressed refusal of the vendee to accept the goods. This first remedy of the vendee, as referred to, has been called an anomaly in the law, and has been questioned by various text writers. (See Mechem Sales, § 1694; Burdick Sales [2d ed.], § 364; Tiffany Sales [2d ed.], § 112.) A large number of States, however, have followed this rule; some States have restricted the application of this rule to situations where the goods tendered

are of such special nature that the seller would have difficulty in finding a market for them. (See cases cited in note 18, p. 946, Williston Sales.) In this state of the law, differing in England and in different jurisdictions in this country, Mr. Williston, the draftsman of the Sales Act, has adopted the modified form of the New York rule, as held in some of the jurisdictions in this country, and allowed the seller to force title upon the buyer by tender, and to recover the contract price only in cases where the goods are not readily resalable in the market (See Williston Sales, §§ 363–374); and the statement of this limited rule as found in subdivision 3 of section 144, would seem to be a clear negation of the right to recover the price of the goods where the property has not passed, and in cases when the goods are readily resalable in the market. (Note the language of the court in *Friedner* v. *Schenck*, 163 N. Y. Supp. 150, decided in 1917, and *Turner-Looker Co.* v. *Aprile*, 195 App. Div. 712.)

Inasmuch, therefore, as the provisions of our Personal Property Law contained in section 144 have followed the provision of the Sales Act, and as the provisions of the Sales' Act have modified the provisions of the English Sale of Goods Act by adding to the cases in which the vendor may sue for the contract price, the provision that such suit may be brought when property has not passed only when the goods are not readily resalable in the market, it would seem clear that the plaintiff has not brought itself within the provisions of subdivision 1 of section 144 of our Personal Property Law, and is not entitled to recover for the price of the goods, but can only sue for the failure of the defendant to accept the goods, in which case the measure of damage would be the difference between the contract price and the market price of the goods. (See *Mosler Safe Co.* v. *Brenner*, 100 Misc. Rep. 107.) The Legislature might have added to section 144 another subdivision and provided that the price could be recovered if the property be retained in the seller solely for the purpose of security. But it did not. The right of an injured party to a broken contract is primarily to sue for damages. In the case of goods sold and delivered the damages to the vendor for breach by the vendee is the contract price. The construction of the contract is determined by the intention

of the parties. Certain rules are specified as determining intention "unless a different intention appears." (§ 100, as added by Laws of 1911, chap. 571.) An appropriation to the contract of goods sold as unascertained goods only vests title in the buyer when "assented to by the buyer." The statute gives complete remedy to a seller for refusal of the buyer to accept delivery, and specifies the rule of damages. (§ 145, as added by Laws of 1911, chap. 571.) In case of a refusal by the vendee to accept the goods, the action for the price is in effect an action for specific performance not allowed as to personal property except under peculiar circumstances. Subdivision 3 of section 144 specifies a case of peculiar circumstances under which the court will, as it were, decree specific performance of a contract for the sale of merchandise. It is most significant that the only case there mentioned is the case where the goods cannot be readily resold in the market. Where, however, both title and possession are retained in the seller for whatever purpose and where the goods can be readily resold in the market, the vendor does not need this remedy of specific performance, but can be fully compensated in an action to recover for a refusal by vendee to accept the goods tendered.

It is unnecessary in this action to determine the extent of the property right which passes to the buyer under such a bill of lading; and it is unnecessary here to determine what may be the rights of a vendor or vendee in a conditional sale, or where the goods have been sold and a mortgage returned to secure the purchase money. (See Williston Sales, § 333.) It would seem, as before indicated, that the buyer has under such a bill of lading a beneficial interest which is greater than a mere contract right. In this case the seller has reserved both the title and the control of the goods, as they are deliverable only upon his order, and for whatever purpose he may have retained this property in the goods, the general property, as required by section 144, subdivision 1, has not passed to the buyer.

Counsel for the respondent relies on three cases for his proposition that a mere tender of the goods and setting them aside for the buyer justifies an action for goods sold and delivered, namely: *Butler Brothers* v. *Hirzel* (87 App. Div.

463; affd., 181 N. Y. 520); *Horst* v. *Montauk Brewing Co.* (118 App. Div. 300); *Turner-Looker Co.* v. *Aprile (supra).* The first two cases were decided prior to the adoption by New York of the amendment of the Personal Property Law in 1911. The last case was decided since the passage of that law. The case was decided with two judges dissenting. The provisions of section 144 of the Personal Property Law are there discussed and the effect of tender of the goods as authorizing a recovery of the purchase price. The. opinion refers to the remarks of Bogert in his work on the Sale of Goods in New York, at page 246, where the author says: " The New York rule upon this subject has been greatly modified by the Sales Act. Now only in cases where the goods ' cannot readily be resold for a reasonable price ' may the seller force the title on the buyer and recover the price of him. Formerly he could recover the price in all cases after due tender." The opinion then refers to the fact that this note is under a title which reads "Action for price when title has not passed." The rule as stated by Bogert is there held as not applicable on the ground that title had passed to the seller prior to the tender. The case at bar is distinguishable, however, from that case, because confessedly, prior to the tender of the bill of lading the title was expressly reserved in the seller, under the form of the bill of lading as declared in section 101, subdivision 2. If the purport of that decision be to reinstate the former rule in this State under the common law, that a mere tender of the goods is sufficient to pass title to the buyer, I am unable to assent to that proposition, for such a holding would render meaningless subdivision 3 of section 144, which seems to allow a recovery of the purchase price only where tender has been made and refused, and where the goods are not readily resalable in the market.

From the contract as set forth in this opinion it will be noticed that there is no provision as to where these goods shall be shipped. The contract is signed in behalf of the defendant by the manager of the Argentine Department. There are provisions in the contract which clearly contemplate transportation by water and the buyer is to designate the route and the carriers, except that the seller may designate the initial carrier. The seller was not, therefore, authorized

to ship these goods to New York. It might ask for instructions as to the routing; and for failure of the buyer to give those instructions it might claim that the point of delivery was to be at the seller's place of residence. The goods, however, were without authority shipped to New York, which was the general place of business of the defendant. The tender to the buyer of the bill of lading for goods thus shipped to New York consigned to the seller, or his order, was not in any event a proper tender of the goods under the contract. The rejection of the goods was put upon the ground that Morse had no authority to make this contract for the defendant. As to this I am of opinion that the contrary finding by the jury was sufficiently supported by the evidence. The fact, however, that this was stated as a ground for rejection cannot be deemed an intentional waiver of the objection that the goods were shipped to New York without instructions, because the defendant had no knowledge of the terms of the contract, or that the contract had been made, although the same was on file at its office. Morse, who had made the contract in their behalf, was not at the time of the rejection in their employ, and had not called the contract to their attention. A waiver can only be found from an act done with intention to waive, which does not here exist.

The judgment and order should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.