WILLIAMS ICE CREAM CO., INC., Plaintiff, *v.* CHASE NATIONAL BANK and ARTHUR B. LAMBORN and Others, Copartners Trading as LAMBORN & COMPANY, Defendants.

Supreme Court, New York Special Term, February, 1923.

Injunctions — purchase of Java sugar to be shipped on designated steamer — requirements of letter of credit disregarded — preliminary injunction granted purchaser against payment of draft continued upon giving undertaking and later vacated on motion — purchaser's right to stop payment of draft — decision on motion vacating temporary injunction not res adjudicata on the right to permanent injunction — defendant cannot recover on plaintiff's undertaking.

Shipments under a contract for the sale of Java sugar by defendant to plaintiff were to be made during August and September, 1920, from Java by steamer to Philadelphia, Penn.  The contract also provided that should a steamer or steamers declared against it fail to arrive at the port of destination, for any cause, the defendant was to be relieved of responsibility under the contract and further that payment should be made by net cash on presentation to a bank in New York of sight draft and invoice, with bill of lading attached, with an additional provision for an irrevocable letter of credit in favor of defendant, which plaintiff immediately obtained at a New York bank.  On September 29, 1920, defendant declared a certain named steamer as the one carrying the sugar, and about November seventeenth it received word indirectly that though the vessel had been damaged and had put into port for repairs the sugar was not injured.  On December 13, 1920, the defendant in a letter to plaintiff explaining that the unavoidable delay of said steamer was due to some extent to her machinery, declared another steamer against the contract, stating that it carried the same quality of sugar from the same shipment from Java.  Thereafter when this vessel was within a short distance of New York, its original port of destination, defendant caused it to be diverted to Philadelphia and upon its arrival there on December sixteenth, which was Saturday, presentation of a sight draft accompanied by the requisite shipping documents was made by defendant to the New York bank but payment of the draft was delayed until the following Monday on account of the lateness of the day, but in an action to restrain payment of the draft a temporary injunction was served upon the defendant and the bank on Monday before payment could be made.  Upon a motion to continue the injunction the plaintiff was required to increase its undertaking to $2,500, but finally the preliminary restraining order was vacated, the draft paid by the bank and plaintiff received the sugar.  *Held*, that whether plaintiff is liable upon the undertaking upon which defendant seeks to enforce collection, depends upon the right of plaintiff at the commencement of the action to an injunction upon the merits and upon that question the decision upon the motion vacating the temporary injunction is not *res adjudicata*.

The letter of credit was a contract complete in itself but it did not follow that such a letter obtained, as here, by plaintiff pursuant to a contract requiring it to procure the same, could be amended, modified or changed without its consent; the original letter of credit when once accepted became part of the contract of sale and its terms were to be read into the sale agreement.

Upon the findings of the court that there had been a disregard of the requirements of the letter of credit; that the payment of the draft was in violation of its terms

**302** WILLIAMS ICE CREAM CO., INC., *v.* CHASE NATIONAL BANK.

Supreme Court, February, 1923.                    [Vol. 120

and constituted a breach by defendant of the contract, all of which would have entitled plaintiff at the commencement of the action to a final injunction against payment of the draft, judgment will be entered accordingly.

ACTION for an injunction.

*Arnold Lichtig* (*Arnold Lichtig* and *Herbert A. Mossler,* of counsel), for plaintiff.

*Rushmore, Bisbee & Stern* (*George N. Hamlin* and *Joseph V. Klein,* of counsel), for defendant Chase National Bank.

*Van Doren, Conklin, McNevin & McClenthen* (*Louis O. Van Doren* and *Alfred C. B. McNevin,* of counsel), for defendant Lamborn.

WAGNER, J. Plaintiff's contract of April 23, 1920, with defendant provided for the sale by defendant of 500 bags of Java white sugars, f. o. b. cars Philadelphia, Penn.; shipments to be made during August and September, 1920, from Java, by steamer or steamers to Philadelphia, Penn.; "names of such steamer or steamers to be declared later." It further provided that should a steamer or steamers declared against this contract fail to arrive at port of destination for any cause sellers are relieved of responsibility under this contract, and further that payment should be made by net cash on presentation of sight draft and invoice, with bill of lading attached, in New York, with additional provision for an irrevocable letter of credit in favor of defendant. The letter was immediately obtained by plaintiff through the Peoples Savings Dime Bank of Scranton, Penn., with the Chase National Bank, evidenced by that bank's letter to plaintiff of May 13, 1920, later modified by consent of the parties, one week succeeding. On September twenty-ninth the defendant in accordance with its rights under the contract of sale declared the steamer *Chifuku Maru* as the one carrying the subject-matter of the sale. During the following fortnight inquiries made by plaintiff as to the course and position of the steamer carrying the said sugar were answered by defendant's advices based on the information it could obtain, when about November seventeenth word was received indirectly by the defendant that said steamer had been damaged and had put into Port Said for repairs; the sugar, however, was not injured. This sequence of events culminated in a letter to plaintiff on December thirteenth, wherein defendant, having explained that the unavoidable delay of the former steamer was due to damage of some extent to her machinery, then declared the steamer *West Cheswald* against plaintiff's contract, stating it carried the same quality of sugar from the same shipment from Java. The defendant thereafter caused the substituted vessel — destination New

York, option New York — after sailing from Port Said to be diverted, when within a short distance of New York, to Philadelphia, as stipulated in the contract of sale. On December sixteenth, upon arrival, presentation of a sight draft accompanied by the requisite shipping documents was made by defendant to the bank, but payment thereof delayed until the following Monday on account of the lateness of the day. Before payment on Monday a temporary injunction, restraining the same, was served upon both defendant and bank. An application for continuance of the injunction *pendente lite* resulted in the court requiring the plaintiff to increase the undertaking on the injunction to $2,500 and, finally, the preliminary restraining order was vacated, the draft paid and the sugar received by plaintiff. Whether any liability subsists on the part of plaintiff upon the undertaking of the injunction depends upon the right of plaintiff at the time of the institution of the action to an injunction upon the merits, restraining the payment of said draft, and presents the question before the court for present determination. The defendant attacks the plaintiff's right to an adjudication of this question, though seeking to enforce collection on the bond, and contends that the plaintiff has no right to relief for the reason that all the facts were before this court when the preliminary injunction was dissolved and the order of dissolution unappealed from amounts to a final adjudication upon the disputed question. I am not in accord with this claim, for a decision on a motion for a preliminary injunction cannot, by reason of the fact that its issuance upon controverted affidavits is mainly one calling forth the exercise of the court's discretion, be *res adjudicata* on the right to a final injunction where the court has before it all the proof and facts adduced upon hearing. There the whole equities of the case are open before the court, and the preliminary denial will not be regarded as any holding of finality. Nor does the fact that the change of circumstances effected a delivery of the sugar to plaintiff, and its acceptance thereof, preclude the plaintiff's present right to a decision of what its rights were as of the time of the commencement of this action. We must look at the status of the case at the time of the trial as being identical with that existing at the time of the issuance of the preliminary injunction, and determine what, if any, were the plaintiff's rights at that time. The original question must be determined independent of any change in status that has subsequently occurred. The change of declaration to the subsequent steamer is charged by plaintiff and relied upon by it as constituting a breach of the contract of April 23, 1920, absolving it from the necessity of compliance with its pro-

visions and entitling him on the facts to an adjudication that the merits compelled the granting of an injunction restraining payment under the letter of credit. It contends that the defendant had no right under any circumstances to substitute a steamer after once the declaration had been made, and certain early isolated *dicta* are used for the support of the proposition, together with interpretation of several recent decisions — in which the defendant was a party — construing contracts for the sale of sugar, not identical in terms with the present one but of the same general character. *Brenner & Perlhoff* v. *Lamborn & Co.*, 276 Fed. Rep. 325, decided by Judge Learned Hand, was in many respects like the instant one. It was there recognized that the case turned upon the power of substitution and decided that such right was in the defendant. The provision in regard to declaration was held to have been made for the defendant's benefit; otherwise under the contract the defendant would have been liable in any event for the delivery of the goods. The loss of the declared vessel was protection to him by way of excuse. Nor did the contract provide that any special steamer was to be named at the time of loading or any special time after shipment; in other words, the buyer could have no interest in the particular ship on which the goods arrived, provided the shipment was made at the contracted period — and it may be observed that the substituted vessel arrived nearly a month previous to the original declared one. *Thornton* v. *Simpson*, 6 Taunt. 556, points the same way. There the seller had declared the *Lively* as the vessel upon which the hemp would be shipped and, finding out later that the complete shipment could not be made upon said vessel, notified the purchaser that the remainder would be carried by two other vessels. The English judges considered his act warranted and upheld his conduct as in conformity with the contract, allowing the substitution made. The time of delivery was held the main and material element, in fact the substance of the contract. A shipment upon the same steamers here involved was recently considered by the Monroe County Special Term of this state in *Smith Co.* v. *Lamborn & Co.*, which case acknowledged the right of defendant's substitution of steamers. Again, the substance instead of the form of the transaction was examined, and it was found that the declaration was a provision existing solely for the defendant's benefit; that the name of the ship was not, therefore, of the essence of the contract, and plaintiff was in exactly the same position as if the former steamer had continued its voyage. In *Wilbur & Sons, Inc.*, v. *Lamborn & Co.*, which again involved a substituted declaration of the *West Cheswald* for the *Chifuku Maru*, the Pennsylvania Court of Common Pleas, Philadel-

phia, Penn. (by Shoemaker, J.), well stated the effect of a similar claim there made by the plaintiff, saying: " Therefore, the plaintiff's claim on this contract is founded on the technical violation of a contract when the purpose of the contract, so far as plaintiff is concerned, has been consummated. The delivery of the sugar was made within the time contracted, the shipment was made within the time fixed, the last steamer declared performed the act the first steamer was declared to do, and on this alone is an alleged breach of contract founded." I am equally unpersuaded by the claim of technical violation here raised in this respect, and my interpretation of the contract, together with the evidence adduced at the trial and the spirit of the above decisions, constrains me to hold that at the time of the institution of this action the defendant had committed no breach of contract as claimed. It is said, however, that an allotment of a proportionate amount of sugar on the prior named vessel caused the plaintiff to acquire an inalienable property right thereto and necessitated the delivery of the identical sugar. The contract itself deprives the argument of validity. The sale was " duty paid f. o. b. cars Philadelphia." The defendant bought under c. i. f. contracts at United States ports; it became owner of title when delivered on board at Java. It so remained until placed on cars at Philadelphia. The declaration itself conveyed no title; the contract read otherwise and controls. As corollary to the above, and falling with them, plaintiff urges that the sugar was not a shipment from Java to Philadelphia, but to New York, since the vessel was lately diverted from its intended destination to the former port and that said indirect or later changed movement breached the contract. In other words, that a shipment is not the course that a designated vessel takes, but a course intended that it should take. This refinement to me seems more one of sophistry than reason and carries with it failure of conviction. As a matter of fact the shipment intended was made, the destination provided for observed, and I refuse to visit penalty upon the defendant for doing in this respect what it contracted to do. Had the vessel not been diverted, then indeed could the plaintiff have complained. *Brazilian & Portuguese Bank, L.,* v. *British, etc., Exchange Bank. Corp.,* 18 L. T. 823, involves distinct facts. It remains to consider the proposition that the change of terms of the letter of credit caused a breach of the contract. The letter of credit obtained by plaintiff required a straight bill of lading to plaintiff's order. Before the draft in question was drawn, and without the consent or knowledge of the plaintiff, the defendant requested the bank to pay upon an

order bill of lading indorsed in blank, and this was agreed upon by an interchange of letters prior to the shipment's arrival in this country. There would seem to be no room for controversy upon a supposed state of facts where an order bill of lading was presented instead of a straight bill that the documents would be insufficient. Carrying the supposition still further, a prior change without the consent of the plaintiff, if justified, as would seem to be indicated by defendant's arguments, would equally allow a present one at the time of payment of the draft, or even an oral change at any time. In fact previous modification had been made only upon plaintiff's consent to the arrangement, doing away with any possible claim that the one now objected to might have been due to an inadvertence. It has been held that a letter of credit is a contract complete in itself. It does not follow, however, from such statement that a letter obtained, as here, by the plaintiff pursuant to a contract requiring it to procure the same can be amended, modified or changed without its consent. The original letter when once accepted becomes part of the contract of sale and its terms are read into the sale agreement. *Lamborn* v. *Lake Shore Banking & Trust Co.*, 196 App. Div. 504; affd., 231 N. Y. 616, is controlling. The letter of credit there required a straight bill; an order bill was presented. The Appellate Division wrote that such an order was not a compliance after showing the vital differences between the two. The opinion reads in part: " The requirement that the bills of lading must be made out to the order of the trust company was, therefore, an important condition of the letter of credit. * * * A party who is entitled to draw against a letter of credit must strictly observe the terms and conditions under which the credit is to become available, and if he does not, and the bank refuses to honor his draft, he has no cause of action against the bank." In fact the bank has no authorization to pay at all unless the seller complies with the provisions of the agreement. This rule is emphasized in such cases as *Rosenberg Bros. & Co.* v. *Buffum Co., Inc.*, 199 App. Div. 482, and *Pottash* v. *Cleveland-Akron Bag Co.*, 197 id. 763. I, therefore, find that there was a disregard of the requirements of the letter of credit; that the payment of the draft was in violation of its terms and constituted a breach by the defendants of the contract, all of which would have entitled the plaintiff to an injunction against their payment at the time of the commencement of the suit. The jurisdiction of this court under the facts appearing is so well established as not to require the citation of authority. Submit findings and judgment in accordance herewith.

Judgment accordingly.