EDWARD THOMPSON CO. v. BOUDIN.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

SALES (§ 93*)—CONTRACTS—ABANDONMENT.
    A publisher of a set of law books for delivery in installments as published delivered a number of volumes to a buyer from two to three years after the publication of the volumes. The buyer refused to accept them, on the ground that the contract had been abandoned by the publisher. Subsequently the publisher removed the books, without notifying the buyer that he would be held liable therefor, or that the books would be held for him. The publisher remained silent for about three years, when it delivered the completed work. The buyer refused to accept it. *Held* to show that the publisher abandoned the contract.
    [Ed. Note.—For other cases, see Sales, Dec. Dig. § 93.*]

Appeal from Trial Term, Suffolk County.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Edward Thompson Company against Louis B. Bou-din. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, THOMAS, and MILLER, JJ.

L. B. Boudin, in pro. per.

Louis N. Rowley, for respondent.

THOMAS, J. On March 12, 1899, the defendant subscribed for a work made and published by the plaintiff, to wit, the American and English Encyclopedia of Law, second edition, "to be completed in not to exceed" 32 volumes, at the rate of $7.50 per volume. The defend-ant gave 12 notes of $7.50 each, payable at various intervals, and $16 in cash, for the 10 ready volumes, which included $31 rent for the use of the first edition thereof pending delivery of the second edition. The 10 volumes were duly delivered March 31, 1899, volume 11 April 19, 1899, and volume 12 July 29, 1899; and the defendant gave the plaintiff therefor cash $16 on April 5, 1899, $7.50 on June 2, 1899, and $7.50 on July 19, 1899. As the defendant did not pay duly, the plain-tiff sued him, in August, 1901, to recover $82.50 for deliveries of vol-umes 1 to 12, inclusive. The complaint stated 11 causes of action, of which each of 10 was on a note for $7.50, and the eleventh set out the contract, alleged delivery of 12 volumes thereunder, that—

"defendant has paid the plaintiff in cash and notes on account of said several deliveries the sum of $113.50, being the said rental of $31 in full, and the price of volumes 2 to 12, both inclusive, of the second edition, and there re-mains due and owing from the defendant to the plaintiff, by reason of the matters alleged in this cause of action, the sum of $7.50, with interest thereon from March 31, 1899."

Such suit was to collect the balance due for the price to be paid per volume for the books or the notes given therefor. On October 15, 1901, the plaintiff stipulated to pay in installments $99 in settlement of the claim in the action and costs; but, failing in this, judgment was entered on November 20, 1902. November 28, 1902, the judgment was discharged upon payment by the defendant. On December 4, 1902, plaintiff shipped to defendant volumes 13 to 17, and the same were delivered to the defendant. On December 9, 1902, defendant wrote the plaintiff that he would not accept the books, "as the contract has been broken by you and abandoned long ago"; that—

"the books will remain at my house and you can have them at any time you will call, which I wish you would do at once, as the space in my house is too valuable to keep boxes with books laying around."

On December 11th the plaintiff's attorney wrote the defendant, de-murring to the position taken by him, and stating that if he did not re-consider, and still declined payment, "I shall have to advise the Ed-ward Thompson Company at once to ship you up to issue, and bring suit." Later the plaintiff sent for and took away the books, and ac-knowledged receipt of them. Nothing occurred thereafter until No-vember 24, 1905, when the plaintiff shipped to the defendant volumes 13 to 32, inclusive. The defendant in writing repeatedly advised the

plaintiff that he would not receive the books, requested their removal, etc. The plaintiff refused. At the time volumes 13 to 17 were first sent to defendant, December 4, 1902, volumes 18, 19, 20, 21, and 22 had been shipped to the trade and were withheld from the defendant, and were not shipped, nor tendered, nor was there any suggestion of the same, until the delivery November 24, 1905, when volumes 13 to 32 were sent. At such date, November 24, 1905, volumes 18 to 32 had been issued as follows: Volumes 18 and 19 in 1901; volumes 20 to 22 in 1902; volumes 23 to 25 in 1903; volumes 26 to 29 in 1904; volume 30 in May, 1905; volume 31 in June, 1905; volume 32 in August, 1905.

The plaintiff offers no justification for its failure to deliver volumes 18 to 22 with volumes 13 to 17 in December, 1902, and seeks to justify its failure to deliver volumes 18 to 32 until 1905 upon the ground that the defendant had refused to keep volumes 13 to 17 and had notified plaintiff that he regarded the contract as abandoned. The fact is that volume 13 was shipped to others on October 30, 1899, volume 14 on February 3, 1900, volume 15 on May 26, 1900, volume 16 on September 10, 1900, and volume 17 on December 26, 1900, and yet there is no pretense of delivery or tender of delivery to the defendant until December 4, 1902, and excuse for this is sought upon the ground that the defendant was in default upon his payments for which the first suit was brought, and that the delivery was made upon the payment of the judgment. Therefore at this point two questions arise: (1) Did the defendant abandon the contract before the last and final delivery? (2) Was the defendant in default at the time of the last delivery?

It will be unnecessary to consider the second inquiry. When the plaintiff delivered volumes 13 to 17, the defendant wrote it that the contract had been abandoned and to take away the books. The plaintiff denied the abandonment, but thereafter took away the books. Why did the plaintiff take away the books? I find no explanation of it, no justification for it, no legal status to be gained by it, consistent with the plaintiff's present contention. It was a bare, unconditional acknowledgment that it would yield to the defendant's claim that the contract had been abandoned. The act has no other meaning. The removal was not qualified by notice that the defendant would be held for the books, or that the books would be held for the defendant. The delivery to defendant was complete. He could not dispossess himself of the books. If the plaintiff was right, it was a fulfillment of its obligation, and yet the plaintiff undid the delivery and took the books back, and thereafter held them in silence for some three years, or for aught that appears sold them as its own, and now claims that such delivery was a fulfillment, or at least that, if it was not, their delivery three years later was a performance on its part. Whether defendant's claim that plaintiff had abandoned the contract was or was not valid is immaterial. It was made after long delay to deliver. The plaintiff repelled it, refused to take back the books, and then took them back in apparent absolute surrender to the defendant's claim. Then it held the books for years, it held later volumes for years, and held them without a suggestion that it was holding them for the defendant, and

after a time that would usually be evidence of the grossest default suddenly imposed the numerous volumes upon the defendant.

I regard the act of taking back volumes 13 to 17 as irrefragable evidence that the plaintiff agreed to regard the contract as abandoned, and that its years of silent waiting thereafter superadd to the conclusion that there was such abandonment. The plaintiff created the books, its time to complete the work was unlimited in time by the agreement, the usefulness of the work to a subscriber was in some degree dependent upon delivery at the time of issue of each volume, its value as property was in some degree impaired by delay, and yet the plaintiff waited the expiration of its own appointed time, after taking back books upon the defendant's contention that the contract had been ended and that the delivery was unauthorized, and then delivered the volumes taken back and the many long before issued, and asserted that the contract was in full life and that the delivery was in full performance on its part.

This judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur.