SAMUEL EISEMAN & CO., INC., Respondent, v. WILLIAM FRUCHTMAN, Doing Business under the Name and Style of ROYAL NECKWARE Co., Appellant.

First Department, December 19, 1924.

Sales — action to recover purchase price of cloth which buyer refused to accept — contract of sale called for cloth thirty-six inches wide and provided that samples should be delivered on specified date — cloth tendered was not thirty-six inches wide — evidence — error to admit evidence that cloth shrank in dyeing — contract is not installment contract under Personal Property Law, § 126, subd. 2 — failure to deliver samples on time constitutes breach of contract — buyer is not liable.

In an action to recover the purchase price of cloth which the buyer refused to accept on the ground that it did not comply with the contract of sale, in which it appears that the contract of sale called for cloth thirty-six inches wide and provided for the delivery of five-yard samples of each piece of cloth on a certain date and that the cloth tendered was not thirty-six inches wide, it was error for the court to admit evidence that cloth of the kind covered by the contract shrank in the dyeing process, for such evidence was entirely irrelevant to the issue which was whether or not cloth thirty-six inches wide was tendered to the buyer.

The contract of sale which provided for the delivery of samples on a certain date and for the delivery of the principal part of the goods purchased on a later date was not an installment contract within the meaning of subdivision 2 of section 126 of the Personal Property Law and, therefore, the failure of the seller to deliver the samples on the date specified constituted a breach of the contract justifying the buyer in repudiating the contract, and the buyer is not, therefore, liable for the purchase price of the cloth.

APPEAL by the defendant, William Fruchtman, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of December, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the 5th day of December, 1923, denying the defendant's motion for a new trial made upon the minutes.

*Emil Weitzner*, for the appellant.

*Greenbaum, Wolff & Ernst* [*Jonas J. Shapiro* of counsel; *Herbert A. Wolff* and *Lawrence S. Greenbaum* with him on the brief], for the respondent.

McAVOY, J.:

The complaint here is predicated upon section 144, subdivision 3, of the Personal Property Law (as added by Laws of 1911, chap. 571). It alleges a cause of action for the price of goods, the property in which did not pass from the seller to the buyer. On January 30, 1920, as alleged, the plaintiff and the defendant entered into a writ-

ten agreement for the sale by the plaintiff to the defendant of seventy-two pieces thirty-six-inch printed poplin, quality S, at one dollar and eighty-five cents per yard, twelve patterns, six colors each, half piece to each color, five-yard samples to be delivered June first and the balance to be delivered about July first, on terms 6/10/60 extra. The price was thereafter reduced from one dollar and eighty-five cents per yard to one dollar and seventy-five cents per yard, and between June 1, 1920, and July 1, 1920, the plaintiff claims it offered to deliver to the defendant 2,539 yards of the said merchandise, which the defendant refused to accept. The plaintiff thereafter notified the defendant that the merchandise was being held by the plaintiff as bailee of the defendant, and that at the time of the defendant's refusal to accept, the merchandise could not be resold for a reasonable price.

Afterward an amendment to the complaint was allowed, reading: " That it was understood and agreed between the parties hereto that printed poplin of a width between 35 inches and 36 inches would be in compliance of the aforesaid contract, and that the aforesaid written agreement was made with said understanding, and that the custom and usage in the trade at the time the aforesaid contract was made, and at all times mentioned in the complaint, was that ' 36-inch printed poplin ' meant printed poplin of a width between 35 inches and 36 inches, and which custom and usage were well known to this defendant."

The answer admits that the plaintiff offered to deliver ninety-two and three-quarters yards of merchandise, and that on or about June 7, 1920, and June 23, 1920, the plaintiff offered additional quantities thereof in attempted performance of the agreement.

The answer sets up two defenses. The first defense, after alleging the making of the agreement and that the agreement required the plaintiff to sell and deliver goods described as " 36 inch printed poplin," and that five-yard samples were to be delivered on June first, alleged that on or about June 2, 1920, the plaintiff offered to deliver to the defendant ninety-two and three-quarters yards of poplin, which, instead of measuring thirty-six inches in width, measured from thirty-five to thirty-five and one-half inches in width, and that promptly thereafter the defendant notified the plaintiff of the plaintiff's breach of warranty and of the defendant's refusal to accept delivery of goods pursuant to the contract.

The second defense alleged a breach of warranty of fitness for use in manufacture. It alleged that prior to the making of the agreement, the defendant made known to the plaintiff that the goods were required for use in the manufacture of neckwear, and the

defendant relied on the skill of the plaintiff in connection therewith. It alleged further the delivery of ninety-two and three-quarters yards of merchandise on or about June 2, 1920, and that the merchandise so delivered was not reasonably fit for use in the manufacture of neckwear in that the width was not thirty-six inches, but varied from thirty-five inches to thirty-five and one-half inches. There was pleaded, too, a notice of breach as required by the statute, and the refusal of the defendant to accept any goods under the contract.

The trial on these pleadings was upon the plaintiff's performance of the contract: (1) as to the delivery of merchandise thirty-six inches wide, (2) as to the time of delivery of the samples (which concededly were not delivered on June first, as required by the contract), and (3) as to the tender by the plaintiff of the merchandise required to be delivered, or plaintiff's readiness, ability and willingness to deliver the same.

The contract read:

" Article — Printed Poplin
   Width — 36" [concededly meaning inches]
   Price — $1.85
   Delivery — July 1
   *    *    *
   12 patterns — 6 colors each — ½ piece each color
   30 yards to the half piece  .
   72 /2 pieces 36" Printed Poplin qual. S at $1.85 per yard
   5 yd. samples June 1st."

The requirement with respect to five-yard samples meant that the defendant was to receive a five-yard sample of each pattern in each color, there being six colors of each pattern. The defendant was to receive on June first a total of seventy-two times five yards of samples, or 360 yards. The bulk of the merchandise, consisting of seventy-two half-pieces containing 30 yards each, would total 2,160 yards. The defendant was to receive under the whole contract's requirements 2,520 yards of merchandise, including 360 yards of samples on June first, and 2,160 yards of piece goods on July first. The plaintiff did not deliver the 360 yards of samples on June first. On June second a partial delivery of the samples was made. This delivery consisted only of 92¾ yards. Plaintiff claims that a tender of 271 yards was made to the defendant on June seventh, and refused by the defendant. On June twenty-third the plaintiff sent the defendant a third and final invoice for $3,807.34, which purported to represent a tender of 2,175⅝ yards of merchandise. The tender of the merchandise covered by the

35

invoice of June twenty-third was made to the defendant on June twenty-eighth, but was refused by the defendant.

It was admitted that plaintiff delivered ninety-two and three-quarters yards of samples on June second or June third; but it is asserted that on examination the defendant discovered that the merchandise was of narrow width. Instead of the samples measuring thirty-six inches in width, they measured thirty-five to thirty-five and three-eighths inches in width. The defendant offered to return the samples, but the offer was refused.

On this appeal two of several questions are presented which are strongly urged by appellant and have apparent merit.

The first of these questions relates to the alleged erroneous admission of evidence whereby a witness was permitted to testify with regard to the manner in which the merchandise, which was the subject of the contract to sell, was manufactured, and particularly with regard to the shrinkage of the merchandise in the dyeing process.

Appellant claims that the contract sued upon clearly required the plaintiff to deliver to the defendant poplin which was thirty-six inches wide. He asserts it was a simple contract for the sale and delivery of merchandise plainly described. There was no provision in the contract allowing for a depreciation in the width of the merchandise caused by shrinkage in the dyeing process; nor was there any provision in the contract for an allowance for depreciation in the width resulting from any cause whatsoever. Indeed the nature of the articles to be manufactured from the goods, to wit, neckwear, required an adherence to the precise width ordered so as to conform to the necessities of manufacture.

The plaintiff endeavored to show that there was a custom in the trade to the effect that a description of merchandise in a contract as being thirty-six inches in width meant goods which were between thirty-five and thirty-six inches in width. The learned trial court excluded evidence of such a custom. The plaintiff sought thereupon to show that in the process of manufacture the goods were dyed and that in the course of dyeing shrinkage occurred. The plaintiff also contended that there was some question as to whether the description thirty-six inches wide meant on delivery to the dyer or delivery to the purchaser. The contract of itself clearly provides that the plaintiff was to deliver to the defendant merchandise thirty-six inches wide. There is no ambiguity in the contract which would create any doubt as to whether the reference to the width of the merchandise related to the time of the delivery to the purchaser or to the time of the delivery to the dyer, there being nothing in the contract with relation to dyeing, except pro-

vision to the effect that if the cost of dyeing should advance there would be an increase in the price and *vice versa.*

The witness Mayer was asked whether he was familiar with the process of dyeing in a general way and he replied that he was. The following question was then put to him: " Is there any shrinkage in that process? " and then a colloquy ensued after which the learned trial court admitted the evidence.

The learned trial court thus permitted evidence relating to the shrinkage of the poplin in the process of dyeing, and held that such shrinkage was of importance in determining the question as to whether the plaintiff substantially performed its agreement.

Where a seller agrees to sell merchandise of a specified description or width to a buyer, evidence of how the merchandise is manufactured or what processes it passes through before it is delivered or tendered, is entirely irrelevant. There was no issue in the case at bar as to whether the plaintiff had properly supervised the manufacture of the poplin or whether the plaintiff had made a sufficient allowance in the width of the poplin which it delivered before it was dyed so as to insure an ultimate width of thirty-six inches. The issue was whether the plaintiff had delivered or tendered poplin which was thirty-six inches wide. Evidence such as was permitted to be given by the witness Mayer was irrelevant and prejudicial, because the jury might thus have found that the plaintiff was permitted in law to alter its express agreement as to width if circumstances of shrinkage in the dyeing process reduced the width. Evidence of this character cannot be the basis of excuse for non-performance of a contract.

Whether there was a shrinkage in the dyeing· process or not was wholly irrelevant. The issue litigated was not the manner in which the goods were manufactured, but the condition of the goods after they were manufactured.

The second point upon which a reversal of the judgment is sought is that it is asserted that plaintiff failed to prove the delivery of the five-yard samples on June first, as the contract required, and that such delivery constituted a condition precedent to the defendant's obligation under the contract.

The contract undoubtedly provided for delivery of the five-yard samples aggregating 360 yards on June first. No part of the samples was delivered on June first. The plaintiff claimed that $92\frac{3}{4}$ yards were delivered on June second, although the defendant's testimony was that they were delivered either on June second or third. The balance of the samples was not tendered until June seventh according to the plaintiff, or June eighth according to the defendant. The tender was at least six days late. If the contract

had provided for one shipment, and such shipment had been made or tendered six days late, the defendant would have been justified in rejecting the tender.

But we are told that the contract did not provide for one shipment merely; that it was an installment contract and hence the failure to ship the samples on time cannot be availed of unless the delay was material. (Pers. Prop. Law, § 126, as added by Laws of 1911, chap. 571.)

Under the contract the plaintiff had to perform two distinct promises. The first called for delivery of samples on June first, and the second called for the delivery of the bulk of the merchandise on July first.

" The mere fact that by the terms of the contract one performance is to precede the other makes the later obligation conditional on the performance of the earlier obligation." (2 Williston on Contracts, § 869.)

At common law the defendant would have had the right to reject the shipment of June twenty-eighth, because of the failure on the part of the plaintiff to deliver the samples on time.

The basic rule of the common law, that a party to a contract who seeks to recover damages from the other party for the latter's breach must show that he himself is free from fault in respect of a condition precedent, is not abolished by the Personal Property Law's requirement of notice of intention to rescind. (Pers. Prop. Law, § 146, as added by Laws of 1911, chap. 571.)

Section 126 of the Personal Property Law, which the respondent relies upon, is applicable only, however, where the goods are to be delivered by stated installments, which are to be separately paid for. There is nothing in the contract which requires that the goods be separately paid for; hence the provisions of section 126 of the Personal Property Law are inapplicable.

We must hold, too, that the contract in the case at bar was not an installment contract within the meaning of section 126 of the Personal Property Law. Section 126, subdivision 2, of the Personal Property Law specifically refers to " a contract to sell goods to be delivered by stated installments, which are to be separately paid for." This section applies only to a contract which provides for the delivery of goods in installments which are to be separately paid for. The contract in this case contains no provision that the samples were to be separately paid for.

The provision " terms 6/10/60 extra " is not a provision as to the time of payment. It is a provision for credit. The respondent asserts the conclusion that the section applies to a contract which provides either for delivery in installments or for payment in

installments. But neither by its express language nor by its purpose can such an intention be read into the statute.

In Williston on Sales (1st ed. p. 804), discussing the provision of the Sales Act relating to severable contracts, the author says: " But this does not create a divisible or severable contract. The essential feature of such a contract is that a portion of the price is by the terms of the agreement set off against a portion of the goods and made payable for that portion so that when part of the goods have been delivered a debt for that part immediately arises. Where by the terms of a contract the goods are to be paid for at a certain rate so that the price for a portion of them can readily be calculated, though the contract becomes divisible if a portion of the goods are delivered, and a debt arises for them, yet without special agreement it is not payable until all the goods have been received. It is essential to recovery not only that the price for a part can be calculated, but that expressly or impliedly there is a promise to pay for a part."

And in 2 Williston on Contracts (§ 861) the rule is announced that: " Where by the terms of a contract the performance is to be paid for at a certain rate so that the contract price for a portion of the performance can readily be calculated, it is still true that in the absence of an agreement to that effect, no part of the price is payable until the whole performance has been received."

Williston on Sales (1st ed. § 466) makes a similar commentary on this subject.

If this contract does not fall within the purview of section 126 of the Personal Property Law, then it would follow that the plaintiff being in default in respect of the delivery of the samples could not hold the defendant.

A delay of six days in the full delivery of samples, as matter of law, involved the non-performance of the condition of the contract as to the time of their delivery and warranted the repudiation of the contract.

The judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.