BARBER-GREENE COMPANY, INC., Respondent, *v.* M. F. DOLLARD, JR., INC., Appellant.

Third Department, January 19, 1934.

*Joseph A. Murphy* [*Harold J. Hinman* of counsel], for the appellant.

*Bender, Ford, Benson & Comstock* [*Roland Ford* of counsel], for the respondent.

HEFFERNAN, J. In this action respondent recovered judgment against appellant for the purchase price of a trencher, which is a large machine used by contractors in excavating ditches and trenches. The suit was brought under subdivision 3 of section 144 of the Personal Property Law reading as follows: " Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of subdivision four of section one hundred and forty-five are not applicable, the seller may offer to deliver the goods to the buyer, and if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price."

The facts are undisputed. On October 2, 1929, respondent's agent, Fogarty, procured from appellant a written order for the machine, the purchase price of which was $6,265. The sum of $1,465 was to be paid in cash upon delivery of the trencher and the balance in deferred payments. The order contained a provision that title should remain in the seller until the purchase price was paid and that the purchaser would execute promissory notes for the unpaid balance. At the time the order was obtained appellant executed a promissory note for the deferred payments. This note contained a statement that it was given in conformity with the terms of a conditional sales contract between the parties and that it was subject to the terms and conditions of such contract. However, the contract which was to embody the terms of the transaction was never signed by appellant. On October ninth duplicate copies thereof were forwarded by respondent to the National Commercial Bank and Trust Company of Albany with the bill of lading, a sight draft for $1,465 and a letter of instructions. This letter directed the bank to collect the draft, secure the signature of appellant to the contracts and to the note representing the deferred payments. Not until the draft was paid and the documents executed was the bill of lading to be delivered to appellant. The order provided that the machine should be shipped to the purchaser. Respondent consigned the trencher to itself and thus retained complete control over it until the note and the proposed contracts were signed.

The order was taken subject to respondent's approval and

contained a provision that acceptance thereof at the latter's home office in Aurora, Ill., was necessary to constitute a contract. In view of its subsequent conduct it is quite significant that respondent never formally accepted this order by a written indorsement thereon in the space provided for that purpose nor was notice of such acceptance ever transmitted to appellant.

The machine was to be shipped to appellant one week after the receipt of the order and respondent was to furnish the services of an expert mechanic to assist in unloading it and to instruct appellant's operator in its use and care at no extra charge. In fact, the trial court found that delivery was not to be deemed complete until the expert was furnished.

The trencher was shipped from Aurora on October eighth and arrived in Albany three days later; notice of its arrival was promptly communicated to appellant by the railroad company. On October fourteenth appellant notified Fogarty that the machine had arrived and requested the services of the expert mechanic. The mechanic did not arrive on the scene until October eighteenth. Appellant then declined to accept the trencher on the ground that there was an unreasonable delay on respondent's part in providing a service man to unload it and to give the necessary instructions for its operation.

On October twenty-second, Fogarty, pursuant to instructions from his employer, obtained from the bank the bill of lading and reshipped the trencher to respondent, paying freight charges thereon amounting to $277.50. Immediately on receipt of the trencher on October thirty-first respondent mailed to appellant a written statement which read: " For Freight & Expenses Covering Cancelling of Ditcher Covered by Signed Contract Dated 10–2–29, $433.06." Later, and on November twentieth, respondent transmitted a letter to appellant to the effect that the trencher had arrived at Aurora and that to save demurrage it was being unloaded and was being held subject to appellant's orders.

The principal question for determination on this appeal is whether or not an enforcible contract for the sale of the property in question ever came into existence. To constitute a contract there must be an acceptance of the offer because until the offer is accepted both parties have not assented to the contract, or, in the figurative language frequently used by the courts, their minds have not met. (*Barrow Steamship Co.* v. *Mexican Central R. Co.*, 134 N. Y. 15; 13 C. J. 272.) Appellant contends that respondent's conduct clearly shows that there never was an unconditional acceptance of the offer to purchase. While conceding that there

was no written acceptance of the order, respondent urges that when it shipped the machine such order became a binding contract. Respondent's failure to formally accept the order is not conclusive. Unquestionably acceptance may be indicated by conduct or acquiescence. However, where a party relies upon an acceptance by act, performance becomes the test of the acceptance. To make performance of the thing proposed sufficient as an acceptance of the proposal, performance must be in accordance therewith. (13 C. J. 275; *Catlin* v. *Tobias*, 26 N. Y. 217.) The acceptance, to conclude the agreement, must, in every respect, meet and correspond with the offer, neither falling short of or going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand. (13 C. J. 279; *Wittwer* v. *Hurwitz*, 216 N. Y. 259; *Poel* v. *Brunswick-Balke-Collender Co.*, Id. 310.) There can be no variance from the terms of the offer and the acceptance must be complete and without conditions. (*Schenectady Stove Co.* v. *Holbrook*, 101 N. Y. 45; *Malis* v. *Knapp & Baxter, Inc.*, 196 App. Div. 628; *Machinery Utilities Co., Inc.*, v. *Fry*, 224 id. 392.) Thus it has been held that performance must be made in accordance with terms as to amount (*Catlin* v. *Tobias, supra; Hind* v. *Willich*, 127 Misc. 355; affd., 221 App. Div. 857); as to quality (*Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137); as to fitness for purpose intended (*Moore* v. *Otto Gas Engine Works*, 136 App. Div. 713; affd., 204 N. Y. 646); and as to time of delivery (*Eiseman & Co., Inc.*, v. *Fruchtman*, 211 App. Div. 543).

The trial court not only found that by shipment of the trencher respondent did not obligate itself to comply with the conditions of the order but that such shipment did not constitute an acceptance thereof.

Respondent would now have us believe that it accepted appellant's order. The whole transaction tells another story. Respondent's failure to formally accept the order, its insistence that the bank should obtain appellant's signature to a new proposed contract, its consignment of the property to itself are all inconsistent with the theory that it accepted appellant's order. The proof conclusively shows that respondent did not accept the order of October second and did not intend by its acts to let such order ripen into a contract. Under the authorities cited above there never was an acceptance of appellant's proposal, corresponding with the terms of the offer and meeting and " closing with them just as they stand."

There never having been an acceptance of its offer, appellant had the right to withdraw it at any time. Consequently when it notified respondent's agent that it refused to accept the machine

that constituted a withdrawal of its offer to purchase. The law is well settled that one who makes an offer may withdraw it at any time before it is accepted. (*Schenectady Stove Co.* v. *Holbrook, supra; White* v. *Corlies*, 46 N. Y. 467; *Quick* v. *Wheeler*, 78 id. 300; *Hayman* v. *Canton Art Metal Co.*, 174 App. Div. 923; affd., 225 N. Y. 643; *Block* v. *Robitscher*, 112 Misc. 185.)

The judgment under review cannot be upheld for other reasons. Respondent's action, as has been shown, is grounded on subdivision 3 of section 144 of the Personal Property Law. That statute requires respondent to plead and prove that upon appellant's refusal to accept the machine it notified appellant that it was holding the property as bailee for appellant. The statute clearly contemplates that when a buyer refuses to accept goods, the seller must notify him as an incident of the retaking that the goods are being held by the seller as bailee for the buyer. When appellant refused to accept the machine the proof shows that respondent retook the same as its own property and rescinded the contract, if one ever existed, and treated the matter as one for damages for non-acceptance under subdivisions 1 and 2 of section 145 of the Personal Property Law. Having elected to rescind and to rely upon a claim for damages, respondent cannot now maintain an action for the purchase price. (*Morris* v. *Rexford*, 18 N. Y. 552; *Dunlop's Sons, Inc.*, v. *Alpren*, 214 App. Div. 339; *Orcutt* v. *Rickenbrodt*, 42 id. 238; *Grouse* v. *Wolf*, 4 Misc. 535.)

Upon the return of the trencher on October thirty-first, respondent on that day sent appellant the statement heretofore quoted demanding payment of $433.06. In that document there is no demand for the purchase price and no assertion made that respondent was holding the goods as bailee. In retaking the machine and sending this notice it is obvious that respondent regarded the order as canceled, and that it elected to rescind the contract and rely upon a claim for damages. Not until November twentieth did respondent make any claim that the machine was being held subject to appellant's orders. This notice was sent, not as an incident of the retaking, but more than a month after appellant rejected the machine. That notice amounted to an election of remedies. It waived respondent's right to hold the machine as bailee and sue for the purchase price. Once having defined its position, appellant was entitled to accept and act upon respondent's theory of the situation. (*Brewster* v. *Wooster*, 131 N. Y. 473; *Graves* v. *White*, 87 id. 463.)

Where a buyer refuses to take goods and the seller resumes possession of them, the normal inference from taking the goods back and resuming dominion over them is assent to the proposed

discharge of the original sale. (2 Williston Sales [2d ed.], § 497; *Schmid* v. *Klinck Packing Co., Inc.*, 189 N. Y. Supp. 534; *Thompson Co.* v. *Boudin*, 135 App. Div. 872; *Grouse* v. *Wolf, supra.*) And where the seller accepts the goods back he cannot recover the price, unless he revests himself with possession merely as bailee or lienholder. (2 Williston Sales [2d ed.], § 561.)

We are also in accord with appellant's contention that respondent failed to establish that the machine could not readily be resold for a reasonable price. Subdivision 3 of section 144 of the Personal Property Law provides in part that where title has not passed, an action for the price may be maintained only if the goods cannot readily be resold for a reasonable price. This rule is a modification of the law as it formerly existed in this State. (*Turner-Looker Co.* v. *Aprile*, 195 App. Div. 706; affd., 234 N. Y. 517; *Glass & Co.* v. *Misroch*, 239 id. 475.) The fact that the goods cannot readily be resold must be affirmatively alleged and proved as a condition precedent in an action for the purchase price, and the burden of establishing this fact rests upon the plaintiff. (*Harbison* v. *Propper*, 112 Misc. 588.)

The only proof offered by respondent to sustain its burden that the machine could not be resold at a reasonable price is that furnished by its salesman, Fogarty. In view of the trial court's finding that the trencher could not be resold for a reasonable price, Fogarty's testimony is of paramount importance. He testified that he had been in respondent's employment for ten years, and that during that period there was " a reasonable market for those machines." Respondent made no proof whatever that any effort was made to resell this machine or that it could not be resold after the retaking. There is not the slightest bit of evidence in the record from which the inference could be drawn that this trencher could not readily be resold for a reasonable price. In view of the undisputed testimony of respondent's witness Fogarty the finding of the trial court that the machine could not readily be resold for a reasonable price is purely speculative.

From what has been said it follows that respondent is not entitled to maintain this action and, therefore, the judgment appealed from should be reversed and the complaint dismissed, with costs in this court and in the court below.

HILL, P. J., RHODES, McNAMEE and BLISS, JJ., concur.

The court reverses the findings of fact made by the trial court in its decision numbered 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15. The court also disapproves of and reverses the conclusions of law

numbered 1, 2, 3, 4, 5, 6, 7, 8 and 9, contained in the decision of the trial court.

The court makes new findings of fact consisting of the requests to find contained in the proposed findings of fact submitted by appellant to the trial court and therein numbered 14, 15, 19, 20, 21, 22, 44, 45, 46, 52, 54, 56, 69, 70, 71, 72 and 73.

The court also finds as a fact that respondent failed to comply with the terms of appellant's order for the purchase of the trencher in question and that there was no meeting of the minds of the parties and that no enforceable contract ever came into existence.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs.